No. 30,688.

PAUL H. HEINZ, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SHAWNEE, *Appellee*.

(12 P. 2d 816.)

Opinion filed July 9, 1932.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Virgil V. Scholes, Margaret McGurnaghan,* all of Topeka, *Roland Boynton,* attorney-general, and *Everett E. Steerman,* assistant attorney-general, for the appellant.

*John S. Dean, John S. Dean, Jr.,* and *Frazor T. Edmondson,* all of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by an ex-county attorney of Shawnee county against the board of county commissioners of Shawnee county to recover attorney fees for services performed

pursuant to contract with the board while plaintiff was county attorney. The services were rendered in this court in appeals taken in criminal cases by defendants who had been convicted in the district court of Shawnee county while plaintiff was in office. Judgment was rendered for defendant, and plaintiff appeals.

The action was tried by the court, which returned findings of fact and conclusions of law. The court found that the county board had contracted to pay plaintiff for services of the character described, found that services had been rendered, and found the value of the services. Relief was denied on the ground the county board lacked power to make the contract. The question involved is one of statutory interpretation, and the following provisions are pertinent:

"That each organized county within this state shall be a body corporate and politic, and as such shall be empowered for the following purposes: . . . *Fourth,* to make all contracts and do all other acts in relation to the property and concerns of the county, necessary to the exercise of its corporate or administrative powers; . . ." (R. S. 19-101.)

"The powers of a county as a body politic and corporate shall be exercised by a board of county commissioners." (R. S. 19-103.)

"The board of county commissioners of each county shall have the power, at any meeting: . . . *Fifth.* To represent the county and have the care of the county property, and the management of the business and concerns of the county, in all cases where no other provision is made by law." (R. S. 19-212.)

The same scheme of government which provides for a board of county commissioners to manage the business and concerns of the county, provides for a law officer of the county.

"A county attorney shall be elected in each county organized for judicial purposes, who shall hold his office for a term of two years, . . ." (R. S. 19-701.)

"It shall be the duty of the county attorney to appear in the several courts of their respective counties and prosecute or defend on behalf of the people all suits, applications or motions, civil or criminal, arising under the laws of this state, in which the state or their county is a party or interested." (R. S. 19-702.)

"The county attorney shall, without fee or reward, give opinions and advice to the board of county commissioners and other civil officers of their respective counties, when requested by such board or officers, upon all matters in which the county is interested, or relating to the duties of such board or officers, in which the state or county may have an interest." (R. S. 19-704.)

In his field the county attorney is just as independent as the board of county commissioners is independent in its field. It may

be necessary for the county attorney to act contrary to the desires of the county board, or even to sue the board. In practice the boundary between the two provinces may be indistinct and must be pricked out as occasion may require. (*Kerby v. Clay County,* 71 Kan. 683, 81 Pac. 503; *Eble v. State,* 77 Kan. 179, 93 Pac. 803.)

So far as court work is concerned the official duty of the county attorney extends no further than to appear and prosecute and defend in the courts of his county. A federal court sitting in a county is not a court of that county (*Nichols v. Shawnee County,* 76 Kan. 266, 91 Pac. 79), and the fact that the sessions of this court are held in the statehouse, which is in Shawnee county, does not make the court a court of the county.

The county may be involved or interested in litigation in courts other than courts of the county and, speaking generally, the board of county commissioners may do what a private person may do to protect his interests, and to that end may employ an attorney. The county attorney may be employed. In the case of *Gillette v. Comm'rs of Lyon Co.,* 18 Kan. 410, the county board directed the county attorney to attend to a suit pending in Harvey county, in which Lyon county was a party, and directed the county attorney to attend to a suit in the supreme court in which Lyon county was interested. The services were performed, and it was held the county attorney might recover on an implied contract to pay the value of the services.

The same scheme of government which provides a law officer for each county provides a law officer for the state as a whole—the attorney-general.

"The attorney-general shall appear for the state, and prosecute and defend all actions and proceedings, civil or criminal, in the supreme court, in which the state shall be interested or a party, and shall also, when required by the governor or either branch of the legislature, appear for the state and prosecute or defend, in any other court or before any officer, in any cause or matter, civil or criminal, in which this state may be a party or interested." (R. S. 75-702.)

When a defendant, convicted in the district court of a county of an offense against state law, perfects an appeal, this court has jurisdiction of the appeal. From the time jurisdiction attaches the appeal is a criminal proceeding in the supreme court, in which the state is a party and is interested, and the attorney-general shall appear in the proceeding and shall defend for the state. If the

appeal has been taken by the state the attorney-general shall appear and prosecute the appeal for the state.

Standing on the fifth subdivision of R. S. 19-212, quoted above, providing that the county shall have the management of the business and concerns of the county in all cases where no other provision is made by law, the county board contends that R. S. 75-702 deprives the county of power to lend assistance to the attorney-general in the defense of criminal appeals, for the better protection of the county's special interest in the appeal.

That the county as such may be greatly concerned in the conduct of a criminal appeal from the district court to this court is not debatable. While public prosecutions are instituted and conducted in the name of the state, the interest of the state is the general public interest. The actual burden of law enforcement in a county, from apprehension of the suspect to execution of judgment, rests chiefly on the county. Aside from the public interest in suppression and punishment of crime the local financial interest in sustaining a meritorious judgment of conviction is a matter of substantial concern, and the board of county commissioners has authority to deal with the matter in a business way unless prohibited by some provision of law applicable to the specific subject.

Management and control of the state's side of a criminal appeal is vested by the statute in the attorney-general. Employment of the county attorney to represent the county is not designed to displace the attorney-general or to invade the province of his official duty. The purpose of the employment is to aid the attorney-general for the better protection of the county's own peculiar interest, and that the attorney-general may stand in need of such aid, particularly in cases of great importance presenting voluminous records, is not debatable.

The files and records of the case are in the office of the clerk of the district court, and the appellant's transcript is filed there. When the appellant's abstract is served much of the indispensable work of verification can best be done by the county attorney. The judgment of the county attorney with respect to need for and preparation of a counter abstract may be of great value. The benefit to be derived from the advice and assistance of counsel who conducted the prosecution, in the preparation of briefs and in presentation of the appeal, cannot be gainsaid.

It may be observed here that it is a common practice for the county attorney freely to assist the attorney-general. The county attorney is not, however, bound to do so. He could not be ousted from office for failure to perform an official duty if he refused. The statute provides that the attorney-general shall consult with and advise county attorneys, when requested, in all matters pertaining to their official duties (R. S. 75-704); but there is no reciprocal statute, and assistance given the attorney-general by the county attorney is given as a matter of professional courtesy and from desire to serve. This coöperation will doubtless be manifested in the future as it has been in the past; but the attorney-general should not press the matter too far, and boards of county commissioners should not press the matter too far.

The statute under interpretation expresses a general grant of power, and not a limitation upon power. The county board has the care of county property, and has management of all the business and concerns of the county, the management of which is not committed to others. However, to prevent usurpation and confusion in the conduct of public business, we say there is an implication that one officer or board shall not intrude upon the province of another. The county attorney looks after criminal cases in the district court, the attorney-general looks after criminal appeals in the supreme court, and the implication is that the county board may not take the conduct of criminal cases out of the hands of either. The county attorney may not displace the attorney-general, the attorney-general may not displace the county attorney except on direction of the governor or the legislature, and neither the county attorney nor the attorney-general may displace the board of county commissioners in general management of county affairs. We have no such case here.

While the attorney-general conducts the state's side of criminal appeals he does so primarily in the interest of the general welfare. Protection of the financial interest of the county in the results of an appeal is purely incidental. That interest is a matter of special concern to the county, and to permit the county board to protect that interest directly, by tender of assistance to the attorney-general, does not contravene the principle that delegation of power of management and control to one public officer excludes exercise of the power by another public officer.

The county board relies on certain decisions of this court as forbidding the conclusion just announced. The first case cited is that of *State v. Dickinson County*, 77 Kan. 540, 95 Pac. 392. The syllabus reads:

"A contract by which a board of county commissioners undertakes to employ a private person or firm to render services in aid of the collection of taxes, which services the statute makes it the duty of certain township and county officers to render, is *ultra vires*, against public policy, and void." (¶ 1.)

The opinion disclosed that, notwithstanding our tax laws were framed in the light of the experience of the ages in dealing with the problem of how to get money to maintain the government, the county board of Dickinson county in effect undertook to farm out collection of the public revenue to a tax ferret.

Another case cited is that of *Brown v. State*, 73 Kan. 69, 84 Pac. 549. The syllabus reads:

"The board of county commissioners of Barton county made a contract with the publisher of the official county paper to publish a list showing the personal-property statements of all persons in the county returned by the assessors, with the amount of personal property listed or assessed against each person, for which publication and the mailing of a copy to each person named therein the board agreed to pay the publisher $180. The contract was entered into and carried out in good faith. *Held*, that the contract was *ultra vires* and void, . . ."

The opinion shows the purpose of the contract was to ferret out by an indirect method unlisted property, a subject fully covered by express provisions of the tax law.

The case of *Waters v. Trovillo*, 47 Kan. 197, 27 Pac. 822, is relied on. The syllabus reads:

"A contract made by the board of county commissioners, for the county, with attorneys at law, for their services as such, which services are such as the law requires the county attorney to perform, is *ultra vires* and void."

The opinion discloses the county board of Wichita county contracted with a firm of Topeka attorneys that the attorneys should take and prosecute legal proceedings to relieve the county from liability on obligations incurred by virtue of subscription to the stock of a railroad company. The contract ignored the existence of the county attorney, elected to prosecute civil actions on behalf of the county. Incidentally, the contract provided for a fee of $30,000 and traveling expenses.

Another case relied on is that of *Clough & Wheat v. Hart*, 8 Kan. 487, and this case is important. The syllabus reads:

"Where a written contract between a county and an individual shows upon its face that it was made by the county for the professional services of the individual as an attorney and counselor-at-law, which services are such as the law requires to be performed by the county attorney, such contract is *prima facie* void." (¶ 1.)

The opinion discloses a contract with a firm of attorneys to enforce certain claimed rights of the county, as stockholder of a railroad company, against the railroad company and against purchasers of certain Indian lands. The county attorney was ignored, and the decision in this case was the basis of the decision in the case of *Waters v. Trovillo.*

The decision in the case of *Clough & Wheat v. Hart* was rendered in 1871. In the opinion appear the following observations:

"It will also be admitted that in any case other counsel than the county attorney may appear and prosecute or defend for a county under or for the county attorney, or to assist him, looking of course to the county attorney if to anyone, for compensation. It will also be admitted that a county may employ other counsel to perform such of its legal business as the law does not authorize or require the county attorney to perform; and that there may be such business, will not be denied. And it will also be admitted that a county may with the consent of the county attorney employ such assistance for the county attorney as the county attorney may *actually need.*" [Italics in original opinion.] (p. 493.)

We have here recognition of the privilege of prosecuting officers to accept assistance of privately employed attorneys, and the practice has been for prosecuting officers to accept such assistance. We have here also recognition of authority of the county board to employ counsel to perform services which the county attorney is not required to perform, and to furnish legal assistance to the county attorney, with his consent, when deemed necessary. In practice the authority has been freely exercised. By analogy the county may, in its own interest, employ counsel to give needed assistance to the attorney-general. Exercise of such authority is not in derogation of the principle that when the statute has designated certain officers to discharge a certain duty the county board may not interfere.

The practice of employing the county attorney to follow criminal cases to courts other than courts of the county was in vogue in this state as early as 1875. In the case of *Huffman v. Comm'rs of Greenwood Co.*, 23 Kan. 281, it appeared the county treasurer of Greenwood county was prosecuted for embezzlement. A change of venue was taken to Lyon county, where the case was tried. Under the statute the prosecution proceeded in Lyon county as if it originated

there, and it fell to the county attorney of Lyon county to represent the state. The county attorney of Greenwood county, at the instance of the board of county commissioners of that county, attended the trial in Lyon county, and as it appeared, rendered professional services. It was held he might recover on implied contract to pay the value of the services. The specific question involved in this appeal was not raised.

The district court found that recovery of fees for services rendered in three appeals was barred by the statute of limitations. Plaintiff makes technical objection to the manner in which the bar of the statute was brought to the court's attention. The objection is not well taken. (*Mercantile Co. v. Rooney*, 114 Kan. 840, 220 Pac. 1048.)

The judgment of the district court denying relief on causes of action barred by the statute of limitations is affirmed. The judgment of the district court denying relief on other causes of action is reversed, and the cause is remanded with direction to enter judgment for plaintiff on the findings of fact.