No. 53,941

STATE OF KANSAS, *Appellee,* v. WALTER NORMAN, *Appellant.*

(652 P.2d 683)

Opinion filed October 22, 1982.

*Merle E. Parks,* of Kansas City, argued the cause and was on the brief for the appellant.

*J. Dexter Burdette,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: Walter Norman appeals from a jury conviction of felony murder (K.S.A. 21-3401) and aggravated robbery (K.S.A. 21-3427).

The facts out of which this action arose are sordid. Christy Ann Neiderhauser was murdered on December 9, 1980. It was a snowy morning. Ms. Neiderhauser left for work with her husband at 5:30 a.m. She managed the Big-Bi Service Station at 47th and State Streets in Wyandotte County. She arrived at the station at 5:45 a.m. and was last seen there at about 6:50 a.m. Her body was later found in a restroom in Klamm Park in Kansas City at 7:00 p.m. the same day. A gunshot wound in her right temple was the cause of death. It was later learned seventy-seven dollars was missing from the station.

An intensive investigation of the murder began. There were no leads. A reward was established and a secret witness program was initiated. Police efforts were fruitless until March 19, 1981, when Wilson Tyler, Jr., and Nathaniel Lee, both of whom were in jail at the time, made statements to police with regard to the case. Tyler confessed to the robbery and murder and accused Walter Norman and Michael Agee of being participants in both crimes. According to Tyler, Norman was the wheel man. Nathaniel Lee stated he was present near Klamm Park on the morning of the crime and saw a car in the park and someone from the car dumping a large object in the park restroom where the body was later found. He identified Norman as the driver of the car.

Walter Norman gave two statements to the police on January 23, 1981. The first statement pertained to a stolen car in which he was a passenger, when stopped by the police. The incident was unrelated to the murder and robbery but was used as evidence in Norman's trial. Appellant's second statement pertained to the robbery and murder where he denied involvement and implicated Michael Agee. Agee and Tyler were later both convicted of the robbery and murder and are now in prison.

Based on the statements of Tyler and Lee, Walter Norman was charged, tried and convicted of robbery and felony murder. This appeal followed.

Appellant first contends the trial court committed reversible error in failing to rule on his pretrial motions sufficiently in advance of trial.

Norman was arrested March 20, 1981. He was found to be an

indigent and attorney James Thompson was initially appointed to represent him. After preliminary hearing on April 23, 1981, Thompson withdrew as his attorney and Merle E. Parks was appointed as his replacement. A pretrial conference was held on May 6, 1981, at which time Norman was given seven days to file pretrial motions. On May 14, 1981, he filed motions for a preliminary hearing transcript, discovery on Wilson Tyler, Jr., discovery of exculpatory evidence, change of venue and severance. On May 19, after receiving a list of the State's 91 witnesses, appellant filed motions to identify the police officers, to discover the addresses and telephone numbers of the State's witnesses, and to require James Thompson to produce a letter given him by appellant.

On June 10, Walter Norman filed motions seeking to depose the State's witnesses. On this same date appellant received notice the trial was set for July 20, 1981. The trial court heard all of the motions on July 15, granting severance, a transcript of preliminary hearing, discovery, identification of the police officers and production of documents. All other motions were denied. Norman objected to the short time remaining for him to prepare his defense after the ruling on motions but he did not ask for a continuance. The trial commenced on July 20 as scheduled but was stopped by a medical emergency of defense counsel. The trial started over on July 27, 1981, and was completed on August 3, 1981.

It is apparent delay in ruling on the pretrial motions can prevent a defendant from obtaining a fair trial. Here justification for the delay is questionable but, when viewed in the light of appellant's refusal to proceed with his investigation prior to resolution of the motions and failure to request a continuance pursuant to K.S.A. 22-3401, we find no reversible error.

Appellant next contends the trial court erred in refusing to order disclosure of the addresses of State's witnesses.

The State listed 91 witnesses and indicated to appellant it would call all of them to testify. Twenty-one witnesses were actually called. Twelve of the witnesses listed by the State were also on appellant's witness list. Appellant claims the failure to disclose the addresses made the trial a continual surprise and therefore rendered the trial unfair.

The Kansas Court of Appeals in *State v. Burgoon,* 4 Kan. App.

2d 485, 609 P.2d 194, *rev. denied* 228 Kan. 807 (1980), faced a similar problem. The State had only one witness who saw the crimes, sales of marijuana. The witness and the accused were the only people present at the sales. The trial court suppressed the witness's testimony because the State refused to reveal the address of the witness or his neighborhood, contrary to a trial court order. The Court of Appeals affirmed the trial court. Judge Abbott wrote:

"Whether discovery should be allowed in a particular case is generally a question for the trial judge, to be exercised within the bounds of sound discretion. [Citations omitted.] Although discovery provisions under the criminal code are to be liberally construed [citation omitted], a defendant is not entitled as a matter of right to discovery of evidence within the prosecution's control unless a statute provides otherwise. [Citations omitted.]

"The State concedes there may be instances when disclosure is mandated, but it argues that no such rights accrue until trial. This contention clearly is erroneous. There is a constitutional right to discover evidence that is favorable to the accused and is material to his guilt or innocence. [Citations omitted.] The State is required to endorse upon the complaint, information and indictments the names of all witnesses known to the prosecuting attorney [citation omitted]. That requirement serves no purpose if the State is permitted to refuse to disclose the location of the witnesses.

"[W]e acknowledge that the appellate courts of this State are also concerned with the protection of witnesses in criminal cases and, to the extent that an accused's right to a fair trial is protected and the accused's other constitutional rights are not violated, we will endeavor to provide that protection." 4 Kan. App. 2d at 486-87.

The court applied the same analysis of disclosure as it would if the disclosure was of an informer's identity; as stated in *Roviaro v. United States,* 353 U.S. 53, 1 L.Ed.2d 639, 77 S.Ct. 623 (1957):

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." p. 62.

The court in *State v. Burgoon,* 4 Kan. App. 2d 488-89, elaborated on the standard of appellate review:

"Each case must be judged on its own particular facts, and it must necessarily be within the sound discretion of the trial judge whether a witness's address or neighborhood will be disclosed. In the absence of a clear showing of an abuse of

that discretion, the trial judge's determination will not be disturbed on appellate review. When, as here, the witness is a key witness against the accused, the court must at the very least permit a sufficient disclosure of the witness's background so as to allow adequate investigation to insure the accused's Sixth Amendment right of confrontation and cross-examination. [Citations omitted.]

"Our own Supreme Court has previously held that it is discretionary with the trial judge whether to require undercover narcotic agents to reveal their residences on cross-examination during a trial. *State v. Hutchinson,* 222 Kan. 365, 367-68, 564 P.2d 545 (1977). The Supreme Court recognized that generally an accused has a right to require a witness to give his address in order to aid the accused in his right of confrontation. ABA Standards for Criminal Justice, Discovery and Procedure Before Trial § 2.1(a)(i) (Approved Draft 1970), requires that the prosecuting attorney disclose to defense counsel the names and addresses of witnesses subject to protective orders (section 4.4). The Supreme Court also recognized that there are exceptions to that general rule (*Hutchinson* at 368). The defendant in *Hutchinson* failed to make a showing as to why he wanted the addresses and the Supreme Court held the trial judge did not abuse his discretion in sustaining an objection to the question. No guidelines were offered by the Supreme Court and we are of the opinion that, as it is in most discretionary matters, each case must be decided on its own set of facts. Considerable guidance is given to the bench and bar in the cases cited by the Supreme Court (*Hutchinson* at 368) and in this opinion."

*United States v. Cole,* 449 F.2d 194 (8th Cir. 1971), *cert. denied* 405 U.S. 931 (1972), found disclosure of a witness's address a matter of discretion.

Appellant was faced with the task of interviewing 91 witnesses, less the 12 he listed, during the period of time from May 19 to July 20, having no addresses. A tall task, no doubt. On the other hand, appellee argues there was one key witness, Wilson Tyler, Jr. He was known to Norman and his written statement was furnished to appellant prior to trial, which distinguishes this case from *Burgoon.*

Appellee also points out its witnesses were afraid of retribution. One witness used the secret witness program to contact police. The case was notorious.

This is the issue which faced the trial court. The statute does not require disclosure of witness's addresses. As stated in *State v. Burgoon,* the standard of appellate review is whether the trial court abused its discretion. The appellant made no effort to use the most rudimentary of techniques to contact the listed witnesses. He did not use the telephone until prompted by the court. The address of the key witness, Tyler, was available to Norman, and appellant produced a witness who testified to Nathaniel Lee's reputation for untruthfulness. Appellant appeared to invite error on this issue.

While not condoning the practice of refusing to require disclosure of witness's addresses, in light of the absence of a statutory requirement and the special circumstances of this case, we cannot say the trial court abused its discretion. However, it must be pointed out, to insure fundamental fairness the better practice is to require the parties to disclose addresses and phone numbers or produce the witnesses at the courthouse for a pretrial interview by the adverse party.

Appellant next argues the trial court erred in refusing to change venue. Norman claims the wide publicity of this case precluded obtaining an impartial jury. He introduced no evidence. The standards to determine if a change in venue is required are:

"(1) [T]he burden of proof is on defendant, (2) not only prejudice must be shown but it must be such prejudice as to make it reasonably certain the defendant cannot obtain a fair trial, (3) there must be more than speculation, (4) the state is not required to produce evidence refuting that of the defendant, and (5) granting a change of venue lies within the sound discretion of the trial court and its ruling will not be disturbed if supported by competent evidence and if there is no showing of prejudice to the substantial rights of the defendant." *State v. Sanders,* 223 Kan. 273, 280, 574 P.2d 559 (1977).

In *State v. Myrick & Nelms,* 228 Kan. 406, Syl. ¶ 3, 616 P.2d 1066 (1980), it was stated:

"A change of venue will be granted a defendant when he or she can show prejudice has reached the community to the degree that it is impossible to get an impartial jury. Such prejudice may not be established by speculation but must be shown by specific facts and circumstances."

And in *State v. Gander,* 220 Kan. 88, Syl. ¶ 6, 551 P.2d 797 (1976), it was stated:

"Before a change of venue is required prejudice must be shown as a demonstrable reality. The publication of articles in local newspapers does not *per se* establish prejudice."

We conclude no error is shown.

Appellant maintains the trial court erred in admitting evidence of his unrelated criminal activities.

The State introduced evidence through a police officer during trial about appellant being a passenger in a stolen car, giving a false name to the police and walking away while the officer was speaking to the driver in January 1981. The State argues appellant fled the scene to avoid being connected with the Neiderhauser murder and that the incident goes to appellant's credibility.

Appellant contends the incident is irrelevant.

"Relevant evidence is evidence having any tendency in reason to prove any material fact and the determination of relevancy is a matter of logic and experience, not a matter of law. [Citation omitted.] Subject to certain exclusionary rules the admission of evidence lies within the sound discretion of the trial court." *State v. Giddings*, 226 Kan. 110, 111, 595 P.2d 1115 (1979).

The trial court refused to permit further evidence on the subject stating, "It never did get tied up the way I thought it would . . . ."

Clearly, the evidence was inadmissible. It was irrelevant and outside the scope of K.S.A. 60-455. Its admission was error. The question remaining is whether the error is harmless. *State v. Henson*, 221 Kan. 635, 562 P.2d 51 (1977). For trial error to be harmless, a court must be able to declare beyond a reasonable doubt the error did not change the outcome of the trial. *State v. Johnson*, 231 Kan. 151, 643 P.2d 146 (1982). The testimony of Tyler was so strong it overshadowed all else. We hold the error harmless.

The next issue is whether the trial court erred in refusing to admit the proffered testimony of James Thompson. Mr. Thompson was originally appointed to represent Norman but withdrew because of a possible conflict. The proffered testimony pertained to a note given Thompson by appellant. Appellant passed the note to Thompson while Norman and Tyler were in jail together. The note was identified by appellant as having been given to him by Tyler in which Tyler acknowledged he had given a statement to the police involving appellant in the murder for purposes of revenge. Thompson glanced at the letter but did not read it in detail and later misplaced it. It was never found. Tyler had earlier testified he sent no notes to appellant during his stay in jail.

The court correctly refused to admit Thompson's testimony as to the content of the note. There are two statements at issue. The first statement occurred when appellant told Thompson that Tyler wrote the note. The other statement is the letter itself. Appellant's statement to Thompson about the source of the letter is hearsay and does not qualify for the exception under K.S.A. 60-460(*a*) because appellant, though in court, was not available for cross-examination. He did not testify under his 5th Amendment privilege. There was no other proof of authenticity of the note. Thompson's testimony was inadmissible.

Appellant urges the trial court erred in refusing to grant him a new trial on Wilson Tyler's recantation of his previous inculpatory statement. Tyler testified in support of Michael Agee's motion for a new trial, denying having any knowledge of the murder and robbery in this case in spite of his having pled guilty of murder. In the course of the testimony he also denied any knowledge of appellant's involvement in the crime. Tyler claimed revenge was his motive for the previous statement inculpating Norman. Appellant maintained this testimony entitled him to a new trial. The trial court disagreed.

The standard for granting a new trial based on recanted testimony has been well documented. *State v. Watie, Heard and Heard,* 223 Kan. 337, 347, 574 P.2d 1368 (1978) states:

"When a new trial is sought on the basis of recanting testimony of a prosecution witness, the weight to be given such testimony is for the trial judge passing on the motion for new trial to determine. [Citations omitted.] The trial judge is required to grant a new trial only when he is satisfied the recantation of the witness's testimony is true."

*State v. Bryant,* 227 Kan. 385, 391-92, 607 P.2d 66 (1980), states:

"The judicial attitude is that a recantation should be 'looked upon with the utmost suspicion.'

. . . .

"In *State v. Johnson,* 222 Kan. 465, 565 P.2d 993 (1977), the rules for granting a new trial for newly discovered evidence were stated as follows:

" 'The granting of a new trial for newly discovered evidence is in the trial court's discretion. [Citation omitted.] A new trial should not be granted on the ground of newly discovered evidence unless the evidence is of such materiality that it would be likely to produce a different result upon re-trial. [Citation omitted.] The credibility of the evidence offered in support of the motion is for the trial court's consideration. [Citations omitted.] The burden of proof is on defendant to show the alleged newly discovered evidence could not with reasonable diligence have been produced at trial. [Citations omitted.] The appellate review of an order denying a new trial is limited to whether the trial court abused its discretion.' "

The trial court believed the jury returned a reasoned verdict not based solely on Tyler's testimony and gave the recantation little credibility. *Watie* makes the trial court the sole judge of the truthfulness of recanted testimony. The trial court found the story untrue. We find no abuse of discretion.

The judgment is affirmed.

FROMME, J., not participating.