No. 56,165

STATE OF KANSAS, *ex rel.* ROBERT T. STEPHAN, Attorney General, *Petitioner,* v. THE HONORABLE JAY DON REYNOLDS, Associate District Judge, 16th Judicial District; DONALD GOOD; GLENN I. KERBS; MICKEY MOORMAN, Mead County Attorney; TOM SMITH, Special Prosecutor for Meade County, Kansas, *Respondents.*

(673 P.2d 1188)

Opinion filed January 5, 1984.

*Robert T. Stephan,* attorney general, *James E. Flory,* deputy attorney general, and *Timothy G. Madden,* assistant attorney general, were on the brief for the petitioner.

*Robert F. Bennett* and *Leon J. Patton,* of Bennett, Lytle, Wetzler, Winn & Martin, of Prairie Village, were on the brief for respondent The Honorable Jay Don Reynolds.

*Glenn I. Kerbs,* of Patton & Kerbs, of Dodge City, was on the brief for respondents Donald Good and Glenn I. Kerbs.

*Tom R. Smith,* of Liberal, was on the brief for respondent Tom Smith.

*Per Curiam:* This is an action in the nature of mandamus instituted by the attorney general, seeking an order of this court requiring The Honorable Jay Don Reynolds, a judge of the Sixteenth Judicial District of this state, to permit the attorney general to prosecute a criminal case pending in that district. Respondent Donald Good, a practicing attorney in Meade County, is the defendant in the pending case of *State v. Good,* Meade County case No. 83-CR-30, wherein Good is charged with aggravated assault, K.S.A. 21-3410, and battery, K.S.A. 21-3412. Respondent Glenn I. Kerbs is the attorney of record for defendant Good in the Meade County case. Respondent Mickey Moorman is the County Attorney of Meade County. Respondent Tom Smith was employed by the Board of County Commissioners of Meade County as a special prosecutor, under the provisions of K.S.A. 19-723, to prosecute the Meade County case.

The facts are not in dispute. Before the case was filed, the county attorney, Moorman, recognized that he had a conflict

because of numerous prior dealings with the prospective defendant, Good. Moorman conferred about the matter with Judge Don Smith, the administrative judge of the district, and explained to him the reasons that Moorman felt that he was disqualified. Moorman later testified:

"I felt that it was most expedient to have someone else initiate a prosecution or decide whether or not there should be a prosecution in regard to Mr. Good.

. . . .

"When I determined that I would probably have some difficulties, I conferred with Judge Don Smith, the Administrative Judge, and indicated to him that I felt like there was going to be a difficulty. I indicated to him that rather than try to find a special counsel in this Judicial District, I would contact the Attorney General's office and ask if they would review the case for the purpose of prosecution.

. . . .

". . . I indicated to him [Judge Smith] that it was my intentions to contact the Attorney General's office and ask if they would review this matter, rather than ask him to appoint a special prosecutor. He indicated that sounded like a good idea and that would avoid conflicts in the Judicial District, because of the prominence of Mr. Good's firm.

. . . .

"THE COURT: After you conferred with the Attorney General's office, did you have any subsequent conversations on this subject with the Administrative Judge?

"MR. MOORMAN: I'm - I'm not sure."

The complaint in the Meade County case was signed, verified and filed by an assistant attorney general, who appeared for the State when the matter came on for preliminary examination. At that point, the defendant orally challenged the authority of the attorney general to prosecute the district court case. After argument, Judge Reynolds held that the attorney general had no authority to prosecute the case in the trial court; that there was therefore no approved representation of the State of Kansas; and that the county attorney should, within ten days, confer with the board of county commissioners, pursuant to K.S.A. 19-723, and secure the appointment of a special prosecutor. The proceeding was recessed pending the appearance of an attorney engaged by the board of county commissioners to prosecute the case. The board of county commissioners later authorized the employment of respondent Tom R. Smith as special prosecutor in the case. Before any further action was taken in the district court proceeding, this case was filed by the attorney general.

The issue, as presented in the briefs of the respective parties,

is whether the attorney general has the power to commence and prosecute *any* criminal case in *any* district court of this state. We do not think so broad a question need be decided. The controlling issue is whether the attorney general was properly appearing before the Meade County District Court as the prosecutor in the case of *State v. Good,* and whether his office is legally entitled to continue that prosecution.

The constitution and statutes of this state are helpful, but the specific authority of the attorney general to prosecute cases in the trial courts is not spelled out in detail. Likewise, our earlier decisions do not reach the question before us. Article 1, § 1 of the Constitution of Kansas designates the attorney general as one of the executive officers of this state. The constitution is silent as to the attorney general's powers and duties. K.S.A. 75-702 makes it incumbent upon the attorney general to appear for the State and prosecute or defend, *in any court,* any civil or criminal matter in which the State may be interested, when the attorney general is "required by the governor or either branch of the legislature" to do so. Absent gubernatorial or legislative direction, that statute requires the attorney general to appear and defend only those cases which are before the Kansas Supreme Court. K.S.A. 75-108 also imposes upon the attorney general the duty to protect the interests of the State in any action when informed of such action by the governor.

K.S.A. 19-702 imposes a duty upon the county attorneys to appear in the several courts of their respective counties and prosecute or defend on behalf of the state all suits, civil or criminal, arising under the laws of this state, in which the state or the respective county is interested. K.S.A. 19-711 provides that when the county attorney is disabled, any court before whom it is his duty to appear may appoint an attorney to act as county attorney. K.S.A. 19-723 authorizes the board of county commissioners to employ an additional attorney to assist the county attorney.

K.S.A. 75-704 imposes a duty upon the attorney general to consult with and advise county attorneys, when requested by them, in all matters pertaining to their official duties. K.S.A. 41-1107 imposes a duty upon the county attorneys to enforce the intoxicating liquor laws, and when the county attorney neglects or refuses to do so, imposes that duty upon the attorney general.

In *State, ex rel., v. Dawson,* 86 Kan. 180, 119 Pac. 360 (1911), we were confronted with a dispute between the governor and the attorney general. Construing Laws of Kansas 1879, ch. 166, § 71, the forerunner of K.S.A. 75-702, we held that inquisitions under the prohibitory laws were "proceedings" within the import of the statute, and that the attorney general was required to conduct such a proceeding when directed to do so by the governor. In *State v. Finch,* 128 Kan. 665, 280 Pac. 910 (1929), the issue before us was whether the attorney general may control a liquor prosecution in the trial court without the concurrence of, or in opposition to, the county attorney. We reviewed the powers of the attorney general as delineated in our earlier cases and at common law, citing numerous cases from other jurisdictions, and said, "the attorney-general's powers are as broad as the common law unless restricted or modified by statute." 128 Kan. at 671. We noted that the attorney general is by statute the central head of our intoxicating liquor law enforcement. We cited and discussed R. S. 1923, 21-2125, the predecessor of K.S.A. 41-1107, and concluded that, though the attorney general is not required to take part in a liquor prosecution, if he does appear in such a case he is entitled to take full charge and to control the course of the prosecution despite the desires of the county attorney.

*Heinz v. Shawnee County Comm'rs,* 136 Kan. 104, 12 P.2d 816 (1932), was an action by the former county attorney of Shawnee County against the board of county commissioners to recover attorney fees for services performed pursuant to contract with the board while the plaintiff was county attorney. The services were rendered in the Kansas Supreme Court in appeals taken in criminal cases by defendants who had been convicted in the District Court of Shawnee County. We held that, while the county attorney was required by statute, R. S. 1923, 19-702, to prosecute criminal cases in the Shawnee County courts, he was not obligated to appear in the federal courts, the courts of other counties, or the Kansas Supreme Court, and we concluded that he was entitled to recover the value of the services performed for the county in this court. In that opinion, we said:

"It may be observed here that it is a common practice for the county attorney freely to assist the attorney-general. The county attorney is not, however, bound to do so. He could not be ousted from office for failure to perform an official duty if he refused. The statute provides that the attorney-general shall consult with and advise county attorneys, when requested, in all matters pertaining to their

official duties (R. S. 75-704); but there is no reciprocal statute, and assistance given the attorney-general by the county attorney is given as a matter of professional courtesy and from desire to serve. This cooperation will doubtless be manifested in the future as it has been in the past; but the attorney-general should not press the matter too far, and boards of county commissioners should not press the matter too far.

"The statute under interpretation expresses a general grant of power, and not a limitation upon power. The county board has the care of county property, and has management of all the business and concerns of the county, the management of which is not committed to others. However, to prevent usurpation and confusion in the conduct of public business, we say there is an implication that one officer or board shall not intrude upon the province of another. The county attorney looks after criminal cases in the district court, the attorney-general looks after criminal appeals in the supreme court, and the implication is that the county board may not take the conduct of criminal cases out of the hands of either. The county attorney may not displace the attorney-general, the attorney-general may not displace the county attorney except on direction of the governor or the legislature, and neither the county attorney nor the attorney-general may displace the board of county commissioners in general management of county affairs. We have no such case here.

"While the attorney-general conducts the state's side of criminal appeals he does so primarily in the interest of the general welfare. Protection of the financial interest of the county in the results of an appeal is purely incidental. That interest is a matter of special concern to the county, and to permit the county board to protect that interest directly, by tender of assistance to the attorney-general, does not contravene the principle that delegation of power of management and control to one public officer excludes exercise of the power by another public officer." 136 Kan. at 108.

The case at hand illustrates the mutual cooperation and assistance which exists between the offices of the attorney general and the county attorneys discussed in *Heinz*. The record in this case clearly discloses that the county attorney sought assistance from the attorney general. Moorman, having a conflict, could not prosecute Good. Rather than seek the appointment of a special prosecutor, the county attorney opted to seek assistance from the attorney general. It is a common practice for the attorney general, when requested by a county or district attorney, to send one of his assistant or deputy attorneys general to assist the county attorney. Not infrequently the attorney general is requested to take over the prosecution of a particular case.

The attorney general did not take unilateral action in entering the *Good* case. The act of the county attorney in referring the file to the attorney general's office, when the county attorney himself was disqualified, constituted a request for the attorney general to take whatever action was necessary and was an invitation to

prosecute the case. Once a request is made by a county attorney to the attorney general to prosecute a case, the attorney general has discretion. If members of his staff have time to handle the prosecution, the attorney general's office may take over that function; if staff members are otherwise occupied, the attorney general may decline the invitation. He is not bound to take over every local prosecution in which his assistance is requested. K.S.A. 75-704 imposes a duty upon the attorney general to consult with and advise county attorneys, but it does not impose a duty upon the attorney general to prosecute. That function is discretionary, and is of great benefit. It saves the counties the expense of employing special prosecutors, and provides a pool of experienced prosecutors who may handle the trial of criminal cases upon request of the county attorneys.

The attorney general is the chief law enforcement officer of the state. *State, ex rel., v. Rohleder*, 208 Kan. 193, 194, 490 P.2d 374 (1971). He is also designated by K.S.A. 22-2202(19) as one of the State's prosecuting attorneys. When the attorney general is requested by a county attorney to prosecute a case in the trial court, the attorney general may file a complaint and prosecute the case to its conclusion independent of any court order. Once the attorney general enters the case, he controls the prosecution and may not be removed except for cause.

We conclude that the respondent judge erred in holding that the attorney general had no authority to prosecute the case of *State v. Good* under the facts then before him. The attorney general, having been invited by the county attorney to handle the case, was properly and legally appearing as prosecutor in the trial court, and is legally entitled to continue that prosecution.

The petition is granted, and the respondent Judge Jay Don Reynolds is directed to permit the attorney general or any authorized assistant or deputy attorney general to prosecute the case of *State v. Good* now pending in the District Court of Meade County, Kansas.

Judgment is entered for the petitioner.