No. 55,890

STATE OF KANSAS, *Appellee,* v. MUSTAFA ABDULLA ABU-ISBA, *Appellant.*

(685 P.2d 856)

Opinion filed July 13, 1984.

*Robert L. Pottroff,* of Myers and Pottroff, of Manhattan, argued the cause and was on the brief for the appellant.

*James Flory,* deputy attorney general, argued the cause, and *Robert T. Stephan,* attorney general, and *Frank D. Diehl,* assistant attorney general, were on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action from a jury verdict finding Mustafa Abdulla Abu-Isba (defendant-appellant) guilty of communicating a terroristic threat (K.S.A. 21-3419). The appellant contends (1) his arrest was not based on probable cause, (2) the Kansas Attorney General did not have authority to prosecute the action, (3) the trial court erred in the admission of certain evidence, and (4) comments made by the prosecutor during closing argument constituted reversible error.

The appellant was a Ph.D candidate in the School of Veterinary Medicine at Kansas State University. Dr. Stanley Dennis, a KSU professor in the Department of Pathology, was the appellant's adviser for his Ph.D. program. The appellant was dismissed from the graduate program in the fall of 1981, and subsequently applied for readmission.

On May 18, 1982, the appellant went to see Dr. Dennis concerning his readmission application. When Dr. Dennis informed the appellant the application had been denied, the appellant became very agitated and told Dr. Dennis, "I will destroy you before leaving the university. I will destroy Dr. Leipold, and I will destroy Dr. Kruckenberg." Dr. Dennis asked the appellant if he was threatening him. If so, he was going to call the campus police. The appellant said to go ahead and call the campus police. Dr. Dennis did so, but the appellant left his office before the police arrived. The campus police investigated the matter and submitted their findings to the Riley County Attorney.

The appellant again went to see Dr. Dennis the next day and demanded to know why he was not readmitted to the program. The appellant continued to go to Dr. Dennis' office one to three times per day until May 27, 1982. The appellant told Dr. Dennis he would keep up his visits each day until Dr. Dennis did what the appellant wanted.

On June 25, 1982, the appellant went to see Dr. Dennis about

his second application for readmission to the graduate program. Dr. Dennis handed the appellant a letter informing him his application had been considered and denied. The appellant took the news calmly and left the office. Shortly after this the appellant met Dr. Horst Leipold, another professor in the Department of Pathology, in a corridor of the building. Dr. Leipold testified the appellant told him several times in a very enraged and loud voice, "I am going to get you."

Dr. Dennis testified he believed the appellant was threatening his life on May 18, 1982, and that the threat has changed his life. He alters the path he drives to work and keeps his house locked up. The threats interfered with his teaching, research and service work. He was under medication for blood pressure problems at the time of trial. The appellant has never physically attacked Dr. Dennis.

The Riley County Attorney conducted an investigation into the case and decided not to prosecute. A complaint was then filed in the Riley County District Court by an assistant Kansas Attorney General charging the appellant with two counts of communicating a terroristic threat. The case was prosecuted in the district court by two assistant attorneys general. The appellant was found guilty of communicating a terroristic threat to Stanley Dennis and not guilty of communicating a terroristic threat to Horst Leipold.

The appellant first contends the State's complaint and the supporting affidavit did not contain sufficient factual information to support an independent determination that probable cause to arrest existed.

Before a warrant for arrest or search may be issued, there must be a finding of probable cause by a neutral and detached magistrate. The complaint should supply the magistrate with sufficient factual information to support an independent judgment that probable cause exists. Mere conclusions are not sufficient to support such a finding. *Wilbanks v. State*, 224 Kan. 66, Syl. ¶¶ 1, 3, 579 P.2d 132 (1978). Probable cause is the reasonable ground for belief that a specific crime has been committed and that the defendant has committed or is committing it. Under K.S.A. 1983 Supp. 22-2302(1) probable cause information may be set forth in separate affidavits filed with the complaint. Probable cause does not require specific evidence of each element of the offense as

would be needed to support a conviction. Probable cause exists if the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed. *State v. Weigel*, 228 Kan. 194, 197, 612 P.2d 636 (1980), and cases cited therein.

The appellant refers to the "two-pronged test" under *Spinelli v. United States*, 393 U.S. 410, 21 L.Ed.2d 637, 89 S.Ct. 584 (1969); and *Aguilar v. Texas*, 378 U.S. 108, 12 L.Ed.2d 723, 84 S.Ct. 1509 (1964), used to evaluate the validity of a warrant based on hearsay. This "two-pronged test" was abandoned by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. _____, 76 L.Ed.2d 527, 103 S.Ct. 2317 (1983), in favor of a "totality of the circumstances" approach. In adopting the totality of the circumstances approach to ascertain whether based on all the circumstances set forth in the affidavit there is a fair probability that contraband or evidence of a crime will be found in a particular place, the United States Supreme Court stated:

"The task of the issuing magistrate·is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." 462 U.S. at _____, 76 L.Ed.2d at 548.

The Kansas Court of Appeals followed the United States Supreme Court's abandonment of the "two-pronged test" in *State v. Rose*, 8 Kan. App. 2d 659, 665 P.2d 1111, *rev. denied* 234 Kan. 1077 (1983). This court approved the *Rose* decision in *State v. Walter*, 234 Kan. 78, 81-82, 670 P.2d 1354 (1983).

The arrest warrant in the instant case was issued by the judge upon a complaint and supporting affidavits. The complaint is in language similar to K.S.A. 21-3419, which defines the offense of communicating a terroristic threat. A supporting affidavit by an assistant attorney general states Don Winsor, an agent for the Kansas Bureau of Investigation, investigated the incidents involving the appellant and the KSU faculty members. Winsor interviewed numerous witnesses including Drs. Dennis and Leipold. The affidavit recites the appellant's dealings with the pathology department in his attempt to obtain his degree. The

affidavit also relates Dr. Dennis' version of the alleged threat made by the appellant on May 18, 1982, and Dr. Leipold's statements about his encounter with the appellant on June 25, 1982.

The affidavit supplies information of the alleged threats made by the appellant to Drs. Dennis and Leipold. All sources of information in the affidavit are named and reliable. These sources include the victims of the alleged threats. The affidavit establishes probable cause to believe the appellant committed the crime charged against him within the totality of the circumstances analysis of *Gates*.

The appellant next contends the Kansas Attorney General has no authority to prosecute a case in the district court on his own initiative. The appellant maintains the Riley County Attorney was the only person with the power to determine whether he should be prosecuted and the Kansas Attorney General had no authority to supersede this decision. For this reason the appellant filed a motion to dismiss in the trial court. At a hearing before the trial court the Riley County Attorney testified the matter was fully investigated by law enforcement authorities and he reviewed the investigation reports. He declined to file charges against the appellant because he felt the evidence was weak and several months had passed without any alleged threats having been made by the appellant. He testified he never requested the attorney general to come in and prosecute the case. However, when told by an assistant attorney general that his office was going to file a complaint, the county attorney stated, "[T]hat's fine with me." Thereupon, the trial court denied the motion to dismiss.

In *State ex rel. Stephan v. Reynolds*, 234 Kan. 574, 673 P.2d 1188 (1984), the issue was whether the attorney general properly appeared as the prosecutor in a criminal action before the district court. There the county attorney had referred the case file to the attorney general's office where the county attorney himself was disqualified from handling the prosecution. The court reviewed the powers of the attorney general:

"The constitution and statutes of this state are helpful, but the specific authority of the attorney general to prosecute cases in the trial courts is not spelled out in detail. Likewise, our earlier decisions do not reach the question before us. Article 1, § 1 of the Constitution of Kansas designates the attorney general as one of the executive officers of this state. The constitution is silent as

to the attorney general's powers and duties. K.S.A. 75-702 makes it incumbent upon the attorney general to appear for the State and prosecute or defend, *in any court,* any civil or criminal matter in which the State may be interested, when the attorney general is 'required by the governor or either branch of the legislature' to do so. Absent gubernatorial or legislative direction, that statute requires the attorney general to appear and defend only those cases which are before the Kansas Supreme Court. K.S.A. 75-108 also imposes upon the attorney general the duty to protect the interests of the State in any action when informed of such action by the governor. [Emphasis in original.]

"K.S.A. 19-702 imposes a duty upon the county attorneys to appear in the several courts of their respective counties and prosecute or defend on behalf of the state all suits, civil or criminal, arising under the laws of this state, in which the state or the respective county is interested. K.S.A. 19-711 provides that when the county attorney is disabled, any court before whom it is his duty to appear may appoint an attorney to act as county attorney. K.S.A. 19-723 authorizes the board of county commissioners to employ an additional attorney to assist the county attorney.

"K.S.A. 75-704 imposes a duty upon the attorney general to consult with and advise county attorneys, when requested by them, in all matters pertaining to their official duties. K.S.A. 41-1107 imposes a duty upon the county attorneys to enforce the intoxicating liquor laws, and when the county attorney neglects or refuses to do so, imposes that duty upon the attorney general." 234 Kan. at 576.

The court went on to review prior decisions which have dealt with the authority of the attorney general or a county attorney. The court concluded:

"The attorney general is the chief law enforcement officer of the state. *State, ex rel., v. Rohleder,* 208 Kan. 193, 194, 490 P.2d 374 (1971). He is also designated by K.S.A. 22-2202(19) as one of the State's prosecuting attorneys. When the attorney general is requested by a county attorney to prosecute a case in the trial court, the attorney general may file a complaint and prosecute the case to its conclusion independent of any court order. Once the attorney general enters the case, he controls the prosecution and may not be removed except for cause.

"We conclude that the respondent judge erred in holding that the attorney general had no authority to prosecute the case of *State v. Good* under the facts then before him. The attorney general, having been invited by the county attorney to handle the case, was properly and legally appearing as prosecutor in the trial court, and is legally entitled to continue that prosecution." 234 Kan. at 579.

The issue here is whether under the facts and circumstances of this case the attorney general had authority to prosecute this criminal action in the district court. This is not a case where a county attorney and the attorney general are in disagreement over the proceeding instituted in the district court. Here, the county attorney was not opposed to the initiation of the prosecution by the attorney general. We therefore need not address

the broad issue of whether the attorney general has the power to commence and prosecute *any* criminal case under *any* circumstance in *any* district court of this state, a question which we leave open. In this case the Riley County Attorney expressed no opposition to the attorney general's decision to commence and prosecute this action against the appellant, thereby acquiescing in the attorney general's decision. We view the acquiescence herein as equivalent to an invitation to the attorney general to prosecute the action, and the case falls within the rule set forth in *Reynolds*. Under the circumstances of this case the attorney general properly and legally prosecuted this action before the district court.

The appellant contends the trial court erred in failing to give a limiting instruction concerning testimony given by Bill Stowe, a friend of the appellant. Stowe testified he had talked with the appellant on August 19, 1982, at which time he attempted to dissuade the appellant from considering violence as an option to solve his problems at KSU. The appellant had informed Stowe he might do something violent to vindicate himself for being dismissed from the Ph.D program. Stowe testified the appellant felt Dr. Dennis was the foremost member of the KSU faculty who had mistreated him and destroyed his honor. Stowe also testified similar conversations with the appellant occurred on August 21, 1982, and September 26, 1982.

The trial court admitted this testimony over defense counsel's objection, holding it was relevant to the issue of the appellant's intent at the time the alleged threats were made to Dr. Dennis and Dr. Leipold. The defense proffered a limiting instruction which read, in part:

"Dr. E. C. 'Bill' Stowe offered testimony that defendant was considering violence on or about August 19, 1982. This testimony was admitted into evidence for the limited purpose of showing what defendant may have been thinking on May 18, 1982, and June 25, 1982."

This instruction was not given by the trial court. The appellant contends Stowe's testimony was irrelevant, that it confused the jury on the issue of intent, and the failure to give a limiting instruction denied him a fair trial.

Relevant evidence is evidence having any tendency in reason to prove any material fact, and the determination of relevancy is a matter of logic and experience, not a matter of law. Subject to

certain exclusionary rules the admission of evidence lies within the sound discretion of the trial court. *State v. Norman*, 232 Kan. 102, 108, 652 P.2d 683 (1982). K.S.A. 21-3419 defines a terroristic threat as "any threat to commit violence *communicated with intent to terrorize another . . . ."* All circumstances surrounding the communication, including the relationship between the parties, must be considered in determining whether the communication in issue is a terroristic threat. *State v. Miller,* 6 Kan. App. 2d 432, 435, 629 P.2d 748 (1981).

On the use of evidence of subsequent or prior acts to establish intent, 29 Am. Jur. 2d, Evidence § 366, p. 415, states:

> "Where one is charged with a criminal act which may be innocent or guilty according to the intent with which it was done, the acts, conduct, or statements of the accused on other occasions may be proved in order to show such intent, although such proof cannot be extended to acts, conduct, or statements of the accused which do not naturally or necessarily bear on the issue to be established. . . .
>
> "Evidence of subsequent, as well as prior, acts, conduct, or statements of the accused bearing on the issue of his intent with respect to a criminal offense with which he is charged may be admissible. This does not render admissible every subsequent self-serving act of the accused, but the circumstances of the individual case must be considered, the inquiry in each instance being whether the evidence of the accused's subsequent mental state is of any probative value as to his state of mind at the time of the alleged criminal acts, and if so, whether the evidence would unduly entangle the issues and confuse the jury."

See also 22A C.J.S., Criminal Law § 623; 1 Wharton's Criminal Evidence § 209 (13th ed. 1972); *Moorman v. United States,* 389 F.2d 27, 30 (5th Cir. 1968); *United States v. Stoehr,* 196 F.2d 276, 282 (3d Cir. 1952).

The determination of the relevance and admissibility of the appellant's subsequent statements to Stowe concerning possible violence against the members of the Pathology Department at KSU was within the sound discretion of the trial court. The appellant's contemplation of violence against the faculty members in August and September was found by the trial court to be relevant to the issue of the appellant's intent when the alleged threats were made by him in May and June. We agree with this conclusion. In addition, K.S.A. 60-445 vests broad discretion in the trial court to balance the probative value of evidence against the prejudicial effect it may have on the jury. *State v. Green,* 232 Kan. 116, 123, 652 P.2d 697 (1982). The evidence presented was not so prejudicial as to outweigh its probative value and deprive

the appellant of a fair trial. We find the trial court did not abuse its discretion in allowing this evidence to be admitted.

The jury was instructed that to find the appellant guilty of communicating a terroristic threat the following elements had to be established:

"1. That the defendant threatened to commit violence.

"2. That such threat was communicated with intent to terrorize Stanley M. Dennis and that this act occurred on or about the 18th day of May, 1982, in Riley County, Kansas."

The instruction follows PIK Crim. 2d 56.23 which was approved in *State v. Knight,* 219 Kan. 863, 867, 549 P.2d 1397 (1976). The instruction given setting forth the elements of the crime required that the intent to terrorize be present at the time the threat was communicated. Error cannot be predicated on the refusal to give an instruction when its substance is adequately covered in other instructions. See *Black v. Don Schmid Motor, Inc.,* 232 Kan. 458, 474, 657 P.2d 517 (1983). The trial court did not err in refusing to give the instruction requested by the appellant.

As his final point the appellant argues a remark made by the prosecutor during closing argument constituted reversible error. After discussing the testimony of another witness who overheard the alleged threat to Dr. Leipold, the prosecutor stated:

"She thought he was serious. And I guarantee you these gentlemen to whom he spoke these words took him seriously."

The trial court refused to admonish the jury to disregard the remark.

The appellant points to the well-established rule in this state that error is committed when a prosecutor injects his or her personal opinion into closing argument. See *State v. Williams,* 228 Kan. 723, 732, 621 P.2d 423 (1980); *State v. McDaniel & Owens,* 228 Kan. 172, 179, 612 P.2d 1231 (1980); *State v. McClain,* 216 Kan. 602, 607-08, 533 P.2d 1277 (1975); DR 7-106(C)(4) (232 Kan. clxxxviii). Although the remark by the prosecutor of which complaint is made was improper, we do not believe it constituted reversible error. For such remarks to be harmless error, the reviewing court must be able to declare the error had little, if any, likelihood of having changed the result of the trial and the court must be able to declare such a belief beyond a reasonable doubt. *State v. Johnson,* 231 Kan. 151, 159, 643 P.2d 146 (1982). Here the remark by the prosecutor

amounted to no more than a summation of the testimony of Dr. Dennis and Dr. Leipold. Dr. Dennis testified he took the threats "very seriously" and has changed numerous aspects of his lifestyle to protect himself from a possible attack by the appellant. Dr. Leipold testified he was very upset by the appellant's threat, that he felt threatened and is still afraid of the appellant, and that he also took precautions to protect himself from violence by the appellant. Nevertheless, whether or not Dr. Dennis and Dr. Leipold took the appellant's threats seriously and believed they were being threatened is immaterial to the issue of the appellant's guilt or innocence. The primary issue is whether *the appellant* communicated the threats *with the intent to terrorize the victims,* not whether the victims took the threats seriously and actually felt threatened. Assuming the jury followed the court's instructions, as we must on the record here presented, the comment made during closing argument would not have had any effect on the jury's determination of guilt or innocence. We hold it to be harmless error.

The judgment of the lower court is affirmed.

HOLMES, J., not participating.

LOCKETT, J., concurring in part and dissenting in part. I agree with the court on all issues raised by the appellant except that I would grant a new trial to the appellant because the trial court refused to admonish the jury to disregard remarks in the prosecutor's final closing argument which injected his personal opinion into the trial.

In his final portion of closing argument, after discussing the testimony of another witness who overheard the alleged threat to Dr. Leipold, the prosecutor stated:

"She thought he was serious. And I guarantee you these gentlemen to whom he spoke these words took him seriously."

The appellant did not immediately object. Upon completion of the State's final closing argument, the defense attorney asked to approach the bench. The following conversation occurred:

"MR. POTTROFF: I didn't stop counsel during the middle of his argument because I didn't want to compound the problem. Personal guarantees as to credibility of a witness is ex post facto reversible error. And our Supreme Court has said that.

"MR. DIEHL: I didn't give a personal—

"MR. POTTROFF: He said and I would ask to read back the record if the Court has any question about it, I guarantee these men felt terrorized. I wrote it down when it was said, and that is a personal guarantee.

"THE COURT: Are you requesting a mistrial?

"MR. POTTROFF: I'm not requesting a mistrial, I'm requesting an admonition, a strong admonition that any personal beliefs on the part of the prosecutor is not an issue in this case and anything that he has said which indicates that he personally believes one way or another should be disregarded from—by them. I could give the case, there is a Kansas case on point where a personal guarantee as to the credibility of a witness came up and the Supreme Court of the State of Kansas in one of the few times that they have done it reversed on that ground. It's an improper statement by counsel that is under criminal law head note, I believe 1136. I'm not sure of the exact head note, but I have just argued this case in front of a different court in Abilene and I'm convinced that that's the law. I would ask for an admonition to that effect.

"MR. DIEHL: It's not my opinion as to their—whether they were telling the truth or veracity and mention any specific witness.

"THE COURT: The Court does not remember the testimony or not the testimony but the argument in question. And do you have any idea where in the argument that it took place Mr. Pottroff?

"MR. POTTROFF: Yes, Your Honor, it was—would have been halfway through the second argument. I mean as we're talking, the last five or ten minutes of this rebuttal."

The trial court had the court reporter read back the prosecutor's statement.

"THE COURT: Well, it would seem to the Court two things, number one that any admonition to the jury at this point in time would only emphasize this error. The Court is not familiar with the case that would make it reversible error. The Court is certainly familiar with the cases where the prosecution is not to invoke their personal opinion or statements of what their personal beliefs are in the case and this is probably an improper argument, but it seems to me that no contemporaneous objection to it was made at the time, that is the time that it should have been made that—at the time that it should have been cured. To further do anything about it now would only emphasize or if it was done and absent showing of the authority and I realize you haven't had much chance, but I think we need to get this thing moved along. And frankly, in my opinion that's not going to sway that jury one way or the other, so the Court will make no admonition and the jury will be retired for deliberation.

"(Thereupon, the proceedings continued in the hearing of the jury.)"

The majority correctly determined it is error for a prosecutor to inject his or her personal opinion into closing argument. This rule is so essential to a fair trial that the ABA Standards, The Prosecution Function § 5.8 (*b*) (1971) provide:

"It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant."

Our Rule No. 501, Code of Professional Responsibility, DR 7-106(C)(4), 232 Kan. clxxxviii, states:

"In appearing in his professional capacity before a tribunal, a lawyer shall not:

. . . .

"Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matter stated herein."

The majority opinion cites *State v. Williams*, 228 Kan. 723, 621 P.2d 423 (1980); *State v. McDaniel & Owens*, 228 Kan. 172, 612 P.2d 1231 (1980); and *State v. McClain*, 216 Kan. 602, 533 P.2d 1277 (1975). In each of these cases cited, there was no contemporaneous objection to the improper argument; the court was not requested to admonish the jury to disregard the improper statement; nor was the issue raised until after closing argument had been made to the jury. That is not what occurred in this case.

Here, the appellant's attorney, after the State's final portion of closing argument, raised the issue by requesting the trial judge to admonish the jury to disregard the prosecutor's improper remark. The trial judge acknowledged the remark was improper but refused to admonish the jury as requested by the appellant. The trial judge's refusal to admonish the jury to disregard improper remarks compounded the original error by the prosecutor, thereby denying the appellant a fair trial.

The majority have in effect overruled the cases cited in the majority opinion and dissent. Each of those cases cited determined the general rule did not apply because the defendant had failed to timely object at the trial. Here the appellant, prior to the jury being instructed by the trial court, properly raised the issue. Furthermore, the majority now state that when a trial judge acknowledges an improper remark was made in closing argument, he may ignore the timely objection to the improper remark and refuse the request to admonish the jury. The trial court's admonishment to the jury required to cure any prejudice resulting from improper admission of statement or evidence would be no longer required. *State v. Mick*, 229 Kan. 157, Syl. ¶ 3, 621 P.2d 1006 (1981); *State v. Thompson*, 221 Kan. 176, 182, 558 P.2d 93

(1976). Such conduct by a trial judge should not be approved by this court. Such a rule is neither fair nor proper.

The appellant deserves a new trial.

PRAGER, J., joins the foregoing concurring and dissenting opinion.