Dudley R. Feuerborn, President Kansas Association of Counties P.O. Box 408 Garnett, Kansas 66032
Dear Mr. Feuerborn:
As the president of the Kansas association of counties (KAC), an instrumentality of its member counties under K.S.A. 19-2690, you request our legal opinion on the following questions:
"1. Is the KAC subject to the cash basis law, K.S.A. 10-1101 etseq? . . .
"2. If the KAC is subject to the cash basis law, is an employment agreement dated January 12, 1994, between KAC and its former executive director in violation of the cash basis law since it provides for a three-year term of employment creating a debt in excess of the amount funds (sic) actually on hand for such purpose . . .?
"3. Is the KAC subject to the Open Records Act, K.S.A. 45-215 etseq?
"4. Is KAC entitled to be represented by the Attorney General under K.S.A. 75-702 if it elects to file an action to void a settlement agreement and release between KAC and its former executive director?"
K.S.A. 19-2689 and 19-2690 are the only two statutes that specifically address the nature and powers of the KAC. K.S.A.19-2689 makes the KAC a participating employer in the Kansas public employees retirement system (KPERS). K.S.A. 19-2690
states:
 "From and after January 1, 1976, the Kansas association of counties is hereby constituted an instrumentality of the member counties of the association. The member counties of the Kansas association of counties acting by and through such instrumentality and in its name shall have power to purchase, or to receive by gift, devise or bequest, and to hold real estate and personal property; to sell and convey any such real or personal property; to make contracts; to have and use a seal for such instrumentality; to sue and be sued in the name of such instrumentality in relation to its property and affairs; and to do all other acts necessary to the exercise of the functions of such instrumentality, except that the payments of the current annual membership dues and subscriptions of each such member county shall be the limit of liability of such member county for the acts and obligations of said instrumentality. In the event the Kansas association of counties is dissolved or otherwise terminated all of its files, records, assets and property whatsoever, shall be delivered to the custody of the secretary of state to be held in custody for the counties of this state."
K.S.A. 10-1101 et seq. set forth the Kansas cash-basis law. Under K.S.A. 10-1102, the cash-basis law applies to "municipalities." K.S.A. 1994 Supp. 10-1101 defines a municipality as "[a]ny county, township, city, municipal university, school district, community college, drainage district and any other taxing district or political subdivision of thestate which is supported with tax funds". (Emphasis added). We must therefore determine if the KAC is a taxing district or a political subdivision of the state supported by taxes.
The cash-basis law is designed to insure that specified governmental units operate on a cash basis by not spending money they do not have or incurring obligations they cannot promptly meet. State ex rel v. Board of Education of City of Topeka,137 Kan. 451, 452 (1933). With regard to entities that are not specifically named in the act, past Attorney General opinions have opined that the cash-basis law is applicable to a rural fire department (Opinion No. 93-95) and a county soil conservation district (Opinion No. 92-121), but not to a board of directors of a city library (Opinion No. 93-45), a board of public utilities (Opinion No. 80-222) or a county hospital board (Opinions No. 87-187, 79-47 and 77-352).
The KAC is an association which is statutorily recognized as an instrumentality of its member counties. The KAC does not itself levy a tax, nor is it able to require another entity to levy a certain amount of taxes on its behalf. Thus it is not a taxing district. However, the KAC receives and is supported by funds paid by counties. It is therefore arguably supported by tax money. We must therefore determine if it is a political subdivision of the state.
In Kansas, cities and counties are clearly political subdivisions of the state. State ex rel Tomasic v. Kansas City Port Authority,230 Kan. 404, 414 (1981). See also Koppel v. City of Fairway,189 Kan. 710, 714 (1962). McClanahan v. Cochise College, 540 P.2d 744,747 (Ariz.Ct.App. 1975) provides some criteria for determining whether an entity is a political subdivision: if it exists for the purpose of discharging some function of local government; has a prescribed territorial area, and possesses authority for subordinate self-government by officers selected by it, it is probably a political subdivision. Other case law reiterates these criteria (especially the territorial test) for determining political subdivision status. See also Dugas v. Beauregard,236 A.2d 87, 89 (Conn. 1967); Arkansas State Highway Commission v.Clayton, 292 S.W.2d 77, 79 (Ark. 1956); Richmond County HospitalAssociation v. McClain, 144 S.E.2d 565, 566 (Ga.Ct.App. 1965);Eston County Hospital Joint Powers Board v. Westates ConstructionCo., 841 P.2d 841, 846 (Wyo. 1992).
Political subdivision status has not been extended to several types of associations formed by public entities. In Lane Councilof Governments v. Lane Council of Governments Employees Ass'n.,552 P.2d 600, 603 (Or.Ct.App. 1976), the court held that an Oregon organization formed by voluntary agreement of a number of local governments to foster intergovernmental cooperation was not a political subdivision. In Wissel v. Ohio High School AthleticAssn., 605 N.E.2d 458, 462 (Ohio Ct. App. 1992) the court found that an athletic association was not a political subdivision. InTexas Learning Technology Group v. C.I.R., 958 F.2d 122, 124 (5th Cir. 1992), the court held that an unincorporated association created by interlocal agreement among Texas public schools for the purpose of managing specific school programs did not qualify as a political subdivision, even though the association had the power to collect funds from all member school districts. Performance of a public service alone appears to be insufficient to create a political subdivision. The Missouri supreme court found that the Kansas City area transportation authority was not a political subdivision of the state, despite the fact that it operated a public transit system by means of a compact executed between two states. Kansas City Area Transportation Authority v. Ashley, Mo.,478 S.W.2d 323, 324 (Mo. 1972).
From our review of case law discussing what constitutes a "political subdivision," we do not believe the KAC qualifies as such. It has no territorial boundaries, does not enact laws, has no taxing authority, exercises no sovereign powers and otherwise lacks most common indicia of a political subdivision. It is therefore our opinion that is not within the cash-basis law definition of a municipality. Thus, in answer to your first question and accordance with the definitional requirements in K.S.A. 10-1101, it is our opinion that the KAC is not subject to the cash-basis law.
This conclusion renders your second question moot and we therefore need not address the issue of whether a particular agreement entered by the KAC is in violation of the cash-basis law.
Your third question requires examination and application of the Kansas open records act (KORA), K.S.A. 45-215 et seq. The KORA applies to public records in the possession of a public agency. We must therefore determine if the KAC qualifies as a public agency for purposes of the KORA.
K.S.A. 1994 Supp. 45-217(e) defines a public agency as "[t]he state or any political or taxing subdivision of the state or anyoffice, officer, agency or instrumentality thereof, or any entityreceiving or expending and supported in whole or in part by thepublic funds appropriated by the state or by public funds of anypolitical or taxing subdivision of the state." (Emphasis added). We have already determined that the KAC is not a political or taxing division of the state for purposes of the cash-basis law. However, as evidenced by the herein emphasized language of K.S.A. 1994 Supp. 45-217(e), the KORA includes other types of entities within its ambit. "The definition of public agency under K.S.A.45-217(e)(1) does not require a body to receive, expend, or be supported by public funds to be a public entity subject to the KORA. Rather, the public funding language is in the alternative. A body is a public agency if it meets one of two tests: (1) the body is the state, a political or taxing subdivision of the state, or an instrumentality of one of those entities, or (2) the body receives or expends and is supported in whole or in part by public funds." Attorney General Opinion No. 93-130.
We believe that the KAC meets both of these alternative tests. K.S.A. 19-2690 states that the KAC is an instrumentality of its member counties. Counties are political and taxing subdivisions of the state. See K.S.A. 19-101. Thus, the KAC is an instrumentality of one or more political or taxing subdivisions of the state. In addition, we believe that the KAC receives all of its funding from county membership dues and, therefore, under either test used to determine if such an entity is subject to the KORA, the KAC qualifies.
Additional support for this conclusion may be found in the final sentence of K.S.A 19-2690 which states, "in the event the Kansas association of counties is dissolved or otherwise terminated all of its files, records, assets and property whatsoever, shall be delivered to the custody of the secretary of state to be held in custody for the counties of the state." This provision makes it clear that the records of the KAC are considered public in nature. Thus, it is our opinion that the KAC is subject to the provisions of the Kansas open records act.
Your final question concerns legal representation of the KAC by this office in light of K.S.A. 75-702. This statute provides:
 "The attorney general shall appear for the state, and prosecute and defend all actions and proceedings, civil or criminal, in the supreme court, in which the state
shall be interested or a party, and shall also, when required by the governor or either branch of the legislature, appear for the state and prosecute or defend, in any other court or before any officer, in any cause or matter, civil or criminal, in which this state may be a party or interested or when the constitutionality of any law of this state is at issue and when so directed shall seek final resolution of such issue in the supreme court of the state of Kansas." (Emphasis added).
As evidenced by the above emphasized language, the Attorney General provides legal representation to the state. As set forth in K.S.A. 19-2690, the KAC is an instrumentality of its membercounties. The scheme of representation by the Attorney General is generally discussed in Heinz v. Shawnee County Comm'rs.,136 Kan. 104 (1932). As stated therein: "The county attorney may not displace the attorney-general (sic), the attorney-general (sic) may not displace the county attorney except on direction of the governor or legislature, and neither the county attorney nor the attorney-general (sic) may displace the board of county commissioners in general management of county affairs."
In the situation presented, the legal interest involved is a civil contract matter involving an association that is not a state agency, but rather, an instrumentality of several counties. Based upon facts currently available to us, it does not appear that the provisions of K.S.A. 75-702 apply to the KAC so as to require or even allow the Attorney General to provide legal representation to the KAC in filing or defending an action to void a settlement agreement. Thus, it is our opinion that the KAC is not entitled to legal representation by this office in such a matter.
Very truly yours
 CARLA J. STOVALL Attorney General of Kansas
 Theresa Marcel Nuckolls Assistant Attorney General
CJS:JLM:TMN:bas