Nos. 88,654
88,656

STATE OF KANSAS, *Appellee,* v. JIMMY W. CAMPBELL, *Appellant.*

106 P.3d 1129

 Modified opinion filed January 31, 2005.

*Rick Kittel*, assistant appellate defender, argued the cause and was on the brief for appellant.

*Thomas R. Stanton*, deputy district attorney, argued the cause, and *Keith E. Schroeder*, district attorney, and *Phill Kline*, attorney general, were with him on the briefs for appellee.

*Angela M. Wilson*, assistant district attorney, and *Gerald W. Woolwine*, county attorney, were on the brief for *amicus curiae* Kansas County and District Attorneys Association.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Jimmy W. Campbell was charged in case No. 00CR779 with one count of possession of methamphetamine on September 11, 2000. In a separate case, No. 01CR147, he was charged with one count each of manufacture of methamphetamine, unlawful possession of ephedrine with intent to manufacture methamphetamine, possession of methamphetamine with intent to sell, possession of drug paraphernalia with intent to use it to manufacture a controlled substance, and possession of marijuana on December 8, 2000. The two cases were consolidated for a bench trial on stipulated facts, and Campbell was convicted on all 6 counts. He was sentenced to 120 months' imprisonment for possession of ephedrine in violation of K.S.A. 65-7006, and his controlling sentence was 120 months. Campbell appealed the two cases together to the Court of Appeals, which considered them as one appeal and affirmed the convictions and sentences in *State v. Campbell*, 31 Kan. App. 2d 1123, 78 P.3d 1123 (2003), declining to follow *State v. Frazier*, 30 Kan. App. 2d 398, 42 P.3d 188, *rev. denied* 274 Kan. 1115 (2002). Campbell petitioned this court for review of several issues, including sentencing. This court granted Campbell's petition for review only on the sentencing for possession of ephedrine in violation of K.S.A. 65-7006(a).

The narrow issue before us in this appeal is whether Campbell was properly sentenced for a severity level 1 felony for possession of ephedrine with intent to manufacture methamphetamine.

The facts were not in issue in the trial court or the Court of Appeals. In its opinion, the Court of Appeals stated:

"The stipulation of facts . . . sets forth the following:

'4. The investigating officers in this case would testify consistently with their prior testimony at the preliminary hearing and the hearing on the motion to suppress held July 30, 2001, and said testimony is hereby incorporated by reference. A summary of the evidence as it would be presented by the investigating officers and witnesses in this case is as follows:

'a. On the 8th day of December, 2000, officers of the Hutchinson Police Department obtained a search warrant for 16 West 10th, Apt. 4, Hutchinson, Reno County, Kansas. Before executing the warrant, the officers discussed the entry and it was made clear to Sgt. McClarty of the police department that the apartment in question was the apartment at the top of the stairs to the left. Sgt. McClarty stated in his police report of the incident that Sgt. Fesler had informed him that officers were supposed to go in the front doors upstairs and enter the apartment to the left. At approximately 9:28 p.m. on December 8, 2000, Sgt. McClarty, Sgt. Fesler, Officer Robertson and Officer Harcrow executed the search warrant. Upon arrival at the top of the stairs, Sgt. McClarty observed two females in the doorway of apartment # 4, and apartment # 4 was to the right at the top of the stairs. Sgt. McClarty saw the doorway to the left standing open, and that apartment was later identified as apartment # 3. Sgt. McClarty saw that there was no number visible at the top of the stairs at apartment # 3. . . .'

. . . .

"Subparagraph 'e' then sets forth a detailed page of items seized from the apartment claimed to be utilized in the manufacture of methamphetamine; paragraphs 5 and 6 stipulate to a proper chain of custody; paragraph 7 stipulates to the testing of items as being marijuana, pseudoephedrine, methanol, and methamphetamine; paragraph 8 stipulates that Campbell had previously been convicted of possession of marijuana; and paragraph 9 states:

'9. The evidence in this case is sufficient for this Court to determine in its discretion a verdict on the following charges: manufacture of methamphetamine, a level one drug felony pursuant to K.S.A. 2000 Supp. 65-4159; unlawful possession of ephedrine or pseudoephedrine, a level one drug felony pursuant to K.S.A. 2000 Supp. 65-7006; possession of methamphetamine with the intent to sell, a level three drug felony pursuant to K.S.A. 2000 Supp. 65-4161; possession of drug paraphernalia with intent to manufacture methamphetamine, a level four drug felony pursuant to K.S.A. 2000 Supp. 65-4152(a)(3); and possession of marijuana, a level four drug felony pursuant to K.S.A. 2000 Supp. 65-4162(a)(3).' " 31 Kan. App. 2d at 1125-26.

Campbell was charged and convicted of unlawful possession of ephedrine with the intent to manufacture methamphetamine in

violation of K.S.A. 65-7006(a). He was sentenced pursuant to K.S.A. 65-7006(d).

K.S.A. 65-7006 provides in part:

"(a) It shall be unlawful for any person to possess ephedrine, pseudoephedrine . . . or phenylpropanolamine, or their salts, isomers or salts of isomers with intent to use the product to manufacture a controlled substance.

. . . .

"(d) A violation of this section shall be a drug severity level 1 felony."

For Campbell's criminal history category of I, the sentencing range for a drug severity level 1 felony is 138 to 154 months. The sentencing judge granted a durational departure to 120 months. Campbell contends that he was illegally sentenced for possession of ephedrine as a drug severity level 1 felony and that he can be sentenced only under the lesser penalty provision of K.S.A. 65-4152. K.S.A. 65-4152(a) provides: "No person shall . . . possess with intent to use . . . (3) any drug paraphernalia to . . . manufacture [or] compound . . . a controlled substance in violation of the uniform controlled substances act." The penalty for violation of 65-4152(a)(3) is a drug severity level 4 felony. K.S.A. 65-4152(c). For Campbell's criminal history category, the sentencing range for a drug severity level 4 felony is 10 to 12 months. Drug paraphernalia is defined in K.S.A. 65-4150(c) as including "products and materials of any kind which are used or intended for use in . . . manufacturing . . . a controlled substance."

Campbell relies on *Frazier*, 30 Kan. App. 2d 398, in arguing that possession of ephedrine with intent to use it to manufacture a controlled substance in violation of K.S.A. 65-7006(a) and possession of drug paraphernalia with intent to use it to manufacture a controlled substance in violation of K.S.A. 65-4152(a)(3) are identical offenses. When two offenses are identical, the defendant must be sentenced under the statute carrying a lesser penalty. *State v. Nunn*, 244 Kan. 207, 229, 768 P.2d 268 (1989).

With regard to Campbell's sentence under K.S.A. 65-7006, the Court of Appeals stated:

"The State makes a compelling argument that *Frazier* was wrongly decided, in that the legislative intent was not followed, that 65-7006 is the more specific statute, and that the elements of the two crimes are in fact different. In addition,

since *Frazier* was announced, we considered in *Wilson v. State*, 31 Kan. App. 2d 728, 71 P.3d 1180, *rev. denied* 276 Kan. 974 (2003), whether to apply the *Frazier* decision retroactively, and we declined to do so. Judge Knudson's concurring opinion in *Wilson* expressed dissatisfaction with the *Frazier* result and suggested it was wrongly decided. Judge Knudson's concurrence suggested the initial sentence imposed by the trial court in *Frazier* was not an illegal sentence, that K.S.A. 65-4152(a)(3) and K.S.A. 1999 Supp. 65-7006(a) were not identical offenses, and the extension of the holdings of *State v. Nunn*, 244 Kan. 207, 768 P.2d 268 (1989), and *State v. Clements*, 241 Kan. 77, 734 P.2d 1096 (1987), to the circumstances of *Frazier* was unwarranted. 31 Kan. App. 2d at 734-36.

"For the above stated reasons, we will separately consider whether Campbell was properly sentenced. This involves the interpretation of statutes under which our appellate review is unlimited. *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003). In doing so, we must follow the rules of statutory construction which require us to interpret a statute to give the effect intended by the legislature. *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003). Ordinary words are to be given ordinary meaning, and a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English is in it, *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 (1984), and we must read the statutes so as to give effect to every part thereof, *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643-44, 941 P.2d 1321 (1997).

"In this case because there is a clear difference of opinion as to which statute generally deals with the issue and which deals with a certain phase, the holding of *State v. Reed*, 254 Kan. 52, Syl. ¶ 1, 865 P.2d 191 (1993), is applicable and states: 'When there is a conflict between a statute dealing generally with a subject and another statute dealing specifically with a certain phase of it, the specific statute controls unless the legislature intended to make the general act controlling.'

"The issue we face requires us to construe the specific language of two statutes. It is helpful to look to the legislative history and language of each." 31 Kan. App. 2d at 1133-34.

The court then discussed the legislative history relative to the statutes and concluded:

"It is clear that reducing the severity level was considered, rejected, and the legislative intent is to penalize the possession and intended illegal usage of the named substances as drug severity level 1 felonies. The Kansas Legislature believed the State had or has a serious methamphetamine problem. A construction of K.S.A. 65-7006 that would result in a lesser severity level offense would be contrary to the existing legislative intent.

"We understand the valid argument of *Frazier* that the generic language of 'products and materials' of K.S.A. 65-4152 may include the named substances set

forth in K.S.A. 65-7006, but it is also equally logical to look to one statute as generally relating to tools or equipment necessary for manufacturing controlled substances and the other to more specifically cover the precursors to methamphetamine and, thus, find the elements do in fact differ. We agree with the language of Judge Knudson's concurring opinion in *Wilson*, where he said:

> 'Secondly, K.S.A. 65-4152(a)(3) and K.S.A. 1999 Supp. 65-7006(a) are not identical offenses. As correctly noted by the *Frazier* panel, the statutes use different language to describe the respective offenses. Notwithstanding, the panel then proceeds to conclude this is a distinction without a difference as both prohibit the same identical conduct. The difficulty is that both statutes do not prohibit the same identical conduct. K.S.A. 1999 Supp. 65-7006(a) prohibits possession of drugs used to make methamphetamine. K.S.A. 65-4152(a)(3) prohibits possession of drug paraphernalia. To conclude that the offenses are identical required the *Frazier* panel to construct an interpolation inconsistent with the logic and expressed reasoning in *Nunn* and *Clements*.' *Wilson*, 31 Kan. App. 2d at 735.

"We also agree with the *Wilson* concurring opinion that any sentence imposed under K.S.A. 65-7006 is not illegal. It was a valid sentence under a valid statute.

"Finally, we agree with the State's argument that '[t]he legislature's exclusive role in providing, through our statutes, for the punishment of convicted criminals is clear.' *State v. Reed*, 248 Kan. 792, Syl. ¶ 7, 811 P.2d 1163 (1991). We hold the clear legislative intent in K.S.A. 65-7006 was to criminalize the specific items found in Campbell's possession and with his clearly shown usage a drug severity level 1 felony resulted. He was correctly sentenced.

"We decline to follow *Frazier* and respectfully suggest it was wrongfully decided." 31 Kan. App. 2d at 1136-37.

We disagree.

We note that the statutes are not ambiguous and legislative intent is clear. Thus, it is not necessary to consider legislative history. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003). As stated in 4 LaFave, Israel & King, Criminal Procedure § 13.7(a), pp. 96-97 (2d ed. 1999), the overlapping between statutes may be due to poor research or inept drafting in attempting to provide different penalties for overlapping conduct.

It might be useful at this point to back up and take the time to set out the statutes, amendments, and applicable case precedents in order to understand how this issue has developed. The first case

with which we are immediately concerned is *Frazier*, which was decided in March 2002. At all pertinent times, drug paraphernalia has been defined to include "products and materials of any kind which are used or intended for use in . . . manufacturing [or] compounding . . . a controlled substance." K.S.A. 65-4150(c). At the time *Frazier* was decided, K.S.A. 2001 Supp. 65-4152(a) provided that "[n]o person shall use or possess with intent to use . . . (3) any drug paraphernalia to . . . manufacture . . . a controlled substance." K.S.A. 2001 Supp. 65-7006(a) provided that "[i]t shall be unlawful for any person to possess ephedrine [or] pseudoephedrine . . . with intent to use the product as a precursor to any illegal substance." The *Frazier* panel commented on the difference between the wording of 65-4152 "to manufacture a controlled substance" and the wording of 65-7006 "to use as a precursor to any illegal substance" and stated that, despite the language difference, the statutes "require the same requisite criminal intent." 30 Kan. App. 2d at 405. Thus, it concluded that possession of ephedrine or pseudoephedrine and possession of drug paraphernalia were identical offenses. 30 Kan. App. 2d at 405.

On May 17, 2002, the Governor signed a bill that amended both K.S.A. 65-4152 and K.S.A. 65-7006. L. 2002, ch. 155, secs. 3 and 4. Amendments to K.S.A. 65-4152 are not material to this discussion. K.S.A. 65-7006 was amended so that the language difference examined by the *Frazier* panel was eliminated. K.S.A. 65-7006(a) now states that "[i]t shall be unlawful for any person to possess ephedrine [or] pseudoephedrine . . . with intent to use the product to manufacture a controlled substance." L. 2002, ch. 155, sec. 4. The legislature also added to the list of products prohibited for possession with intent to use to manufacture a controlled substance. L. 2002, ch. 155, sec. 4.

As noted by the Court of Appeals in *Campbell*, the legislative history shows that consideration was given to reducing the offense severity level for a violation of K.S.A. 65-7006 but the initiative was defeated in the Senate Judiciary Committee in March 2002. The Court of Appeals correctly stated that the committee minutes include letters from several deputy district attorneys urging retention of the severity level 1 penalty in K.S.A. 65-7006, but its statement

that "[t]he letters requested that additional substances be designated in 65-7006," however, is only partly correct. See 31 Kan. App. 2d at 1136. An assistant district attorney from Sedgwick County expressed support for increasing penalties for possessing items other than ephedrine or pseudoephedrine. The deputy district attorney from Reno County stated that the bill under consideration

"appears to seek new tools to prosecute methamphetamine cases that provide penalties for manufacturing-related crimes that establish presumptive prison sanctions that do not involve the lengthy sentences mandated by level one drug offenses. If that is the goal, it would be more logical to simply amend K.S.A. 2001 Supp. 65-4152 to provide level two drug felony sanctions for the possession of certain chemicals or drug paraphernalia with the intent to manufacture a controlled substance. The provisions of the proposed legislation regarding other chemicals required for the manufacturing process (red phosphorous, lithium metal, sodium metal, iodine, anhydrous ammonia or pressurized ammonia) and paraphernalia unique to the manufacturing process, such as gassing generators, could be easily added to the paraphernalia statute to achieve the result desired by this legislation. I urge you to resist the effort to amend K.S.A. 65-7006." Minutes, Senate Judiciary Committee, March 18, 2002 (H.B. 2075).

*Wilson v. State*, 31 Kan. App. 2d 728, 71 P.3d 1180, *rev. denied* 276 Kan. 974 (2003), is a K.S.A. 60-1507 appeal. Wilson pled no contest to possession of ephedrine or pseudoephedrine in violation of K.S.A. 65-7006 and two other offenses in exchange for the State's dismissal of a number of other counts against him. Wilson was sentenced in March 2000 to 146 months for possession of ephedrine or pseudoephedrine, and 146 months was his controlling sentence. He did not appeal. After *Frazier* was decided in March 2002, Wilson filed his 60-1507 motion contending he was illegally sentenced. The trial court ruled that the motion could not be used to attack a sentence that had not been appealed and, moreover, that *Frazier* was not to be applied retroactively. Wilson appealed, and the Court of Appeals affirmed. 31 Kan. App. 2d at 734.

Judge Knudson wrote a concurring opinion to express his dissatisfaction with *Frazier*, which he believes was wrongly decided for two reasons. 31 Kan. App. 2d at 734-36. He does not believe that Frazier's sentence was an illegal sentence where the district court had personal jurisdiction of the defendant and subject matter

jurisdiction and imposed the statutory sentence for the charged crime. In addition, he does not believe that the possession of drug paraphernalia and possession of ephedrine or pseudoephedrine offenses are identical. Judge Larson's synopsis of Judge Knudson's rejection of the identical offenses argument already appears in this opinion as a quote from *Campbell*. Here is the further discussion of his second reason:

"The difficulty is that both statutes do not prohibit the same identical conduct. K.S.A. 1999 Supp. 65-7006(a) prohibits possession of drugs used to make methamphetamine. K.S.A. 65-4152(a)(3) prohibits possession of drug paraphernalia. To conclude that the offenses are identical required the *Frazier* panel to construct an interpolation inconsistent with the logic and expressed reasoning in *Nunn* and *Clements*. . . .

"As the Supreme Court could not divine legislative intent when faced with two statutes that were identical as to elements, the common sense result was to conclude only the lesser penalty could be imposed to prevent arbitrary charging by prosecutors. To extend the *Nunn* and *Clements* holdings to the circumstances of *Frazier* is unwarranted. The elements test is tenuous, and the result wholly ignores legislative intent to ratchet up the penalty for possession of ingredients necessary to cook methamphetamine while imposing a less severe penalty for possession of drug paraphernalia." 31 Kan. App. 2d at 735-36.

In November 2003, a few months after the *Wilson* opinion was filed, the case now before the court, *Campbell*, was decided. The Court of Appeals held, counter to *Frazier*, that K.S.A. 65-4152(a)(3) and K.S.A. 65-7006(a) are not identical offenses. 31 Kan. App. 2d at 1136-37.

In January 2004, this court unanimously decided *State v. McAdam*, 277 Kan. 136, 83 P.3d 161 (2004), which was before us on the defendant's petition for review. The issue pertinent to the present discussion was whether McAdam was illegally sentenced for conspiracy to unlawfully manufacture methamphetamine when he was sentenced for violation of K.S.A. 65-4159(a), a drug severity level 1 felony, rather than for violation of K.S.A. 65-4161(a), a drug severity level 3 felony. K.S.A. 65-4159(a) provides: "Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to manufacture any controlled substance or controlled substance analog." Methamphetamine is a controlled

substance. See K.S.A. 2003 Supp. 65-4101(e); K.S.A. 65-4107(d)(3).

K.S.A. 65-4161(a) provides in part:

"Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to sell, offer for sale or have in such person's possession with intent to sell, deliver or distribute; prescribe; administer; deliver; distribute, dispense or compound any opiates, opium or narcotic drugs, or any stimulant designated in subsection (d)(1), (d)(3) or (f)(1) of K.S.A. 65-4107 and amendments thereto."

Methamphetamine is a stimulant designated in K.S.A. 65-4107(d)(3).

McAdam had not raised the issue of his sentence in the trial court, but the Court of Appeals treated it as an illegal sentence and considered the question. See 277 Kan. at 142. This court granted McAdam's petition for review of the Court of Appeals' decision on the substantive sentencing issue and denied the State's cross-petition for review.

In the particular circumstances of the case, the court concluded that McAdam could be sentenced only under the lesser penalty provision of K.S.A. 65-4161(a). The court reasoned as follows:

"In *Nunn*, the court considered two criminal offenses with identical essential elements but different penalties. The defendant contended that the trial court erred in not instructing the jury on the offense with the lesser penalty as a lesser included offense. The court rejected defendant's contention and quoted from *State v. Clements*, 241 Kan. 77, 734 P.2d 1096 (1987), where the same argument already had been turned down:

' "Where identical offenses are involved, the question is not truly a matter of one being a lesser included offense of the other. Each has identical elements and the decision as to which penalty to seek cannot be a matter of prosecutorial whimsy in charging. As to identical offenses, a defendant can only be sentenced under the lesser penalty. Here, it would have been the better practice to have instructed on indecent liberties with a child, but the error could have been remedied by sentencing defendant as having been convicted of a class C felony rather than a class B felony. Accordingly, the sentence imposed herein must be vacated." 241 Kan. at 83.' 244 Kan. at 229.

The governing principle, as stated by the court in *Nunn*, is: 'Where two criminal offenses have identical elements but are classified differently for purposes of imposing a penalty, a defendant convicted of either crime may be sentenced only under the lesser penalty provision.' 244 Kan. at 229.

. . . .

"The statutory provisions either have identical elements or they do not, and the analysis for statutes with identical elements differs from the analysis applicable where statutes do not have identical elements. Thus, if K.S.A. 65-4159(a) and K.S.A. 65-4161(a) have identical elements, the proper analysis is that set out in *Nunn*. As we have seen, the elements of K.S.A. 65-4159(a) and K.S.A. 65-4161(a) are identical, as the Court of Appeals noted, 'as applied to this case.' 31 Kan. App. 2d at 446. For example, in other circumstances, the essential elements of a violation of K.S.A. 65-4161(a) could be that the defendant sold opium. For this reason, a decision that McAdam's conduct was prohibited by K.S.A. 65-4161(a) as well as by K.S.A. 65-4159(a) so that he may be sentenced only under the lesser penalty provision of K.S.A. 65-4161(a) is limited to the facts of this case." 277 Kan. at 145-46.

*State v. Nunn*, 244 Kan. 207, 768 P.2d 268 (1989), and *State v. Clements*, 241 Kan. 77, 734 P.2d 1096 (1987), along with *State v. Williams*, 250 Kan. 730, 829 P.2d 892 (1992), are relevant cases that preceded the recent batch of drug cases. In *Clements*, the defendant was charged and convicted of aggravated criminal sodomy with a child under 16 years of age, which was a class B felony. Although he had not raised the issue during trial, on appeal Clements argued that the trial court should have instructed the jury on the lesser included offense of indecent liberties with a child for engaging in sodomy with a child under 16 years of age, which was a class C felony. The State conceded that the offenses were identical and that Clements could have been charged with either offense. The court concluded that Clements' sentence had to be vacated. 241 Kan. at 83. The same statutes were at issue in *Nunn* with the same result. 244 Kan. at 228-29.

In *Williams*, the defendant was charged with indecent liberties with a child, which was a class C felony, for engaging in lewd fondling of a child under 16 years of age with the intent to arouse or to satisfy the sexual desires of the child or offender, or both. Williams should have been charged with aggravated incest because the victim was his step-granddaughter. Aggravated incest, which was a class D felony, was engaging in lewd fondling of a person under 18 years of age who is known to the offender to be related with the intent to arouse or to satisfy the sexual desires of the child or offender, or both. The offenses involved the same physical conduct. They were not identical, however, because aggravated incest re-

quired a family relationship between the offender and the victim but indecent liberties did not. The court held that the State must charge a defendant with aggravated incest rather than indecent liberties with a child when the defendant is related to the victim. 250 Kan. at 737. The court rejected the State's position that it was a matter of prosecutorial discretion as to which crime is charged and, instead, based its decision on the rule of statutory construction that a more specific statute prevails over a general statute unless it appears that the legislature intended to make the general act controlling. The *Williams* court held that the legislature not only intended the more specific statute to prevail but also intended for it to be the exclusive mechanism for punishing lewd fondling of a child the offender knew to be related. 250 Kan. at 732-37.

With regard to the offenses at issue in *Williams*, the court stated:

"For the general statute versus specific statute rationale to be applicable to the two crimes, the indecent liberties statute must be viewed as a statute generally prohibiting certain sexual behavior and the aggravated incest statute as applying to the identical prohibited conduct by a person related to the victim. . . .

"A statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is specific. *Seltmann v. Board of County Commissioners*, 212 Kan. 805, Syl. ¶ 2, [512 P.2d 334 (1973)]. Under this broad definition one of the statutes relates a general law and the other a specific law.

"Although the elements of the two crimes are similar, the distinguishing factor is that aggravated incest requires the act to be committed by a biological, step, or adoptive relative of the child. This relationship is not an element in the indecent liberties with a child statute. From a reading of these statutes, it is clear that the legislature intended to establish certain sex offenses applicable where family relationships are not involved. The legislature also intended that aggravated incest, a crime committed by a person related to the victim, constitutes a less serious offense than when a similar prohibited act is perpetrated by a defendant against a child with whom he or she has no family relationship. We hold where a defendant is related to the victim as set forth in K.S.A. 21-3603(1), the State may charge the defendant with aggravated incest for engaging in the acts prohibited therein but not with indecent liberties with a child." 250 Kan. at 736-37.

In discussing an earlier case on related issues, the court in *Williams* stated:

"We observed that the rule that a more specific statute should prevail over a general statute is merely a rule of interpretation which is used to determine which

statute the legislature intended to be applied to a particular set of facts and that it had no application in that case. We determined if the rule were to apply as a means of determining legislative intent, the rule must yield where there is a clear indication that the legislature did not intend for one statute to be the exclusive mechanism for punishing a given activity." 250 Kan. at 734.

When comparing the statutes in the present case, two panels of the Court of Appeals arrived at opposite conclusions. The *Frazier* panel viewed possession of ephedrine or pseudoephedrine with intent to use it to manufacture a controlled substance in violation of K.S.A. 65-7006(a) and possession of drug paraphernalia with intent to use it to manufacture a controlled substance in violation of K.S.A. 65-4152(a)(3) as identical offenses. The *Campbell* panel concluded that the offenses were not identical.

Commentators on this subject of overlapping statutes discuss a United States Supreme Court case, *United States v. Batchelder*, 442 U.S. 114, 60 L. Ed. 2d 755, 99 S. Ct. 2198 (1979). At issue in *Batchelder* were two overlapping provisions of the Omnibus Crime Control and Safe Streets Act of 1968. See 18 U.S.C. § 922(h) (2000); 18 U.S.C. App. § 1202(a) (1976) (repealed 1986).

*Batchelder* was before the Supreme Court on the Government's petition for certiorari from a Seventh Circuit Court of Appeals decision, which found constitutional infirmities in the imposition of a 5-year sentence under the longer penalty for violation of 18 U.S.C. § 922(h). The Seventh Circuit postulated that the statutes might be void for vagueness, implicate due process and equal protection, or impermissibly delegate the legislature's responsibility to fix criminal penalties to the executive branch. The Supreme Court reversed, finding no constitutional infirmities. 442 U.S. at 123-26. Although here we do not have a constitutional challenge, the commentators' discussion of the issue of overlapping charge selection is relevant and instructive.

*Batchelder* is discussed in 4 LaFave, Israel & King, Criminal Procedure, § 13.7(a), pp. 95-99 (2d ed. 1999). According to LaFave, Israel & King, although distinctions between duplicative and overlapping statutes are not made in *Batchelder*, the two demand separate analyses. Here is the LaFave commentators' discussion of *Batchelder*:

"In assaying the *Batchelder* reasoning, it is useful to think about three types of situations in which a defendant's conduct may fall within two statutes. They are: (1) where one statute defines a lesser included offense of the other and they carry different penalties (*e.g.*, whoever carries a concealed weapon is guilty of a misdemeanor; a convicted felon who carries a concealed weapon is guilty of a felony); (2) where the statutes overlap and carry different penalties (*e.g.*, possession of a gun by a convicted felon, illegal alien or dishonorably discharged serviceman is a misdemeanor; possession of a gun by a convicted felon, fugitive from justice, or unlawful user of narcotics is a felony); (3) where the statutes are identical (*e.g.*, possession of a gun by a convicted felon is a misdemeanor; possession of a gun by a convicted felon is a felony). The Court in *Batchelder* had before it a situation falling into the second category, but seems to have concluded that the three statutory schemes are indistinguishable for purposes of constitutional analysis. But in terms of either the difficulties which are confronted at the legislative level in drafting statutes or in the guidance which is given to a prosecutor by the legislation, the three schemes are markedly different.

"The first of the three is certainly unobjectionable. Such provisions are quite common (robbery-armed robbery; battery-aggravated battery; joyriding-theft; housebreaking-burglary), and usually are a consequence of a deliberate attempt by the legislature to identify one or more aggravated characteristics which in the judgment of the legislature should ordinarily be viewed as making the lesser crime more serious. They afford guidance to the prosecutor, but—as noted in *Batchelder*—do not foreclose the prosecutor from deciding in a particular case that, notwithstanding the presence of one of the aggravated facts, the defendant will still be prosecuted for the lesser offense.

"By contrast, the third of the three is highly objectionable. It is likely to be a consequence of legislative carelessness, and even if it is not such a scheme serves no legitimate purpose. There is nothing at all rational about this kind of statutory scheme, as it provides for different penalties without any effort whatsoever to explain a basis for the difference. It cannot be explained in terms of giving assistance to the prosecutor. 'Where statutes are identical except for punishment, the prosecutor finds not the slightest shred of guidance.' It confers discretion which is totally unfettered and which is totally unnecessary. And thus the Court in *Batchelder* is less than convincing in reasoning that this third category is unobjectionable simply because in other instances, falling into the first category, the need for discretionary judgments by the prosecutor has not been and cannot be totally eliminated.

"As for the second of the three categories, it clearly presents a harder case. Here as well, the dilemma is likely to have been created by legislative carelessness, though this is not inevitably so. In the illustration given above, where the possession of a gun by a felon is listed in both misdemeanor and felony statutes which otherwise cover distinct circumstances, carelessness in the legislative process seems the most likely explanation. Had the legislature given any thought to the matter, surely it would have put the convicted felon case in one category or an-

other. However, overlapping statutes are very common at both the federal and state level, and it can hardly be said that in every instance they are a consequence of poor research or inept drafting. Drafting a clear criminal statute and still ensuring that in *no* instance could it cover conduct embraced within any existing criminal statute in that jurisdiction can be a formidable task. (This fact alone may make courts somewhat reluctant to find overlap per se unconstitutional, although the consequence of such a finding, limiting punishment to that under the lesser of the two statutes until such time as the legislature decides what to do about the now-identified overlap, is hardly a cause for alarm.) Moreover, in the overlap scheme the two statutes will at least *sometimes* assist the prosecutor in deciding how to exercise his charging discretion. 'In overlapping statutes, the focus frequently is on different types of conduct, thus giving the prosecutor at least some idea of which statute he should proceed under.' To the extent of the overlap, however, the conduct is the same, and thus the guidance afforded here falls considerably short of that in the first of the three categories.

. . . .

"Prior to the *Batchelder* decision, some states held unconstitutional statutes which provided different punishment for exactly the same conduct. Some of the decisions went so far as to also cover criminal statutes which merely overlapped with one another. Though the reasoning in these cases was often similar to that found wanting in *Batchelder*, meaning that decision has created some chance that the courts so holding will retreat from their earlier position, there is no reason why this must be the case." 4 LaFave, Israel & King, Criminal Procedure § 13.7(a), pp. 95-99.

As LaFave, Israel & King make clear, the unfettered prosecutorial discretion that is the mischief some courts, including Kansas courts, seek to avoid is significantly curbed when the statutes are overlapping, as contrasted with identical or duplicative statutes. In *McAdam*, the statutes at issue were duplicative; they prohibited identical conduct. McAdam was charged with conspiracy to unlawfully manufacture methamphetamine. K.S.A. 65-4159(a) makes it illegal to manufacture a controlled substance, and methamphetamine is by statutory definition a controlled substance. K.S.A. 65-4161(a) makes it illegal to compound any stimulant designated in K.S.A. 65-4107(d)(3). Methamphetamine is a stimulant so designated, and, by statutory definition, compounding is manufacturing. See K.S.A. 2003 Supp. 65-4101(n). Both statutes prohibit the making of methamphetamine. Before *McAdam*, prosecutors had unfettered discretion whether to charge manufacture of metham-

phetamine under K.S.A. 65-4161(a), a drug severity level 3 felony, or under K.S.A. 65-4159(a), a drug severity level 1 felony.

In its *amicus* brief, the Kansas County and District Attorneys Association cites the dramatic disparity between the penalty for possession of drug paraphernalia with intent to use it to manufacture a controlled substance and the penalty for possession of ephedrine or pseudoephedrine with the same intent as a reason why the Court of Appeals decision should be affirmed. To do so, however, would allow unfettered prosecutorial discretion, which was the basis for our decision in *McAdam*. As LaFave notes, the prosecutor should not be given the discretion to effectively make a sentencing decision without the benefit of sentencing information or expertise.

With regard to guidance in prosecutorial charging decisions, the statutes at issue here are overlapping rather than duplicative, which as described in LaFave, Israel & King present the hard case because to the extent of any overlap, the conduct involved is identical. The conduct prohibited by K.S.A. 65-7006(a) is a defendant's act of knowingly possessing ephedrine or pseudoephedrine with the intent to use the product to manufacture a controlled substance. The conduct prohibited by K.S.A. 65-4152(a)(3) is a defendant's act of knowingly possessing drug paraphernalia with the intent to use it to manufacture a controlled substance. The definition of drug paraphernalia in K.S.A. 65-4150(c) includes "products and materials of any kind" which are intended for use in manufacturing a controlled substance. Thus, the conduct prohibited by K.S.A. 65-4152(a)(3) may include a defendant's act of knowingly possessing a product with the intent to use it to manufacture a controlled substance. Ephedrine and pseudoephedrine are products used in the manufacture of a controlled substance, methamphetamine. Indeed, in K.S.A. 65-7006(a) the legislature used the term "product" as a synonym for ephedrine or pseudoephedrine. In the circumstances of this case, the elements of the offense were knowingly possessing ephedrine or pseudoephedrine with the intent to use it to manufacture a controlled substance. The elements were the same whether Campbell had been charged under the ephedrine statute or the drug paraphernalia statute. Consequently, he must

be sentenced under the lesser penalty provisions for violation of 65-4152(a)(3).

Judgment of the Court of Appeals affirming the district court on the limited issue subject to our grant of review is reversed. Judgment of the district court on that issue is reversed; we vacate Campbell's sentence for violation of K.S.A. 65-7006(a) and remand to the district court with directions to resentence Campbell to a drug severity level 4 felony as provided for a violation of K.S.A. 65-4152(a)(3).