(232 P.3d 347)
No. 101,392

STATE OF KANSAS, *Appellee*, v. KENNETH ADAMS, *Appellant*.

Opinion filed June 4, 2010.

*Meryl Carver-Allmond,* of Kansas Appellate Defender Office, and *Kenneth Duane Adams,* appellant pro se, for appellant.

*Clay Britton,* assistant solicitor general, *Julie A. Carroll,* assistant attorney general, and *Steve Six,* attorney general, for appellee.

Before HILL, P.J., PIERRON, J., and BUKATY, S.J.

PIERRON, J.: Kenneth D. Adams appeals from his jury convictions for six counts relating to a conspiracy to manufacture methamphetamine and possession of methamphetamine. He claims error at various stages of the trial. He contends the trial court erred in denying his motion to suppress the search warrant. Adams also argues the jury was given an improper instruction with regard to testimony about prior drug use. He additionally claims the court erred in sentencing him for possession of lithium metal with the intent to manufacture a controlled substance instead of the lesser penalty provision of possession of drug paraphernalia with the intent to manufacture. Finally, Adams claims the court erred in sentencing him to a higher sentence without proving criminal history to a jury beyond a reasonable doubt. We affirm.

On January 29, 2008, Police Chief Darren Konrade stopped a white pickup truck for failing to stop at a stop sign near Protection, Kansas. The driver was Rachel Nelson. Konrade suspected that Nelson was under the influence and conducted a field sobriety test that she failed. Konrade asked Nelson whether she was under the influence and she admitted to drinking alcohol and smoking methamphetamine. Konrade arrested and gave *Miranda* warnings to Nelson before continuing to question her.

Following Nelson's admission, Chief Konrade searched the truck. The search turned up a written list of several items used in the production of methamphetamine including Toluene, D batteries, lithium, starting fluid, and distilled water. Nelson admitted she had purchased Tolulene and D batteries in order to manufacture methamphetamine, but she claimed the methamphetamine was manufactured in Oklahoma. Nelson also indicated she was living in Protection.

After Konrade questioned Nelson, she admitted that several items related to the manufacture of methamphetamine might be found in her home. Konrade took Nelson to the police station and had her prepare a written statement. Another officer, Deputy Trent Allen, prepared an affidavit in support of a search warrant.

In the affidavit, Deputy Allen stated: "Based on my training and experience, I am familiar with how controlled substances are manufactured, obtained, diluted, packaged, distributed, sold and used." Allen proceeded to describe various types of methamphetamine manufacture and the ingredients used in the process. The affidavit details using chemicals for precursors, reagents, solvents, and catalysts. Finally, in the probable cause portion of the affidavit, Allen wrote the following:

"Nelson failed standard field sobriety testing and was questioned about drug use, Nelson stated that she had purchased several methamphetamine precursors in Woodward Oklahoma yesterday January 28, 2008. She stated that the precursors that she had purchased were located at 107 W. Main in Protection, Kansas. Also Mrs. Nelson provided a voluntary written statement about these activities. Mrs. Nelson also stated that George Pitcherello was at her residence at 107 W Main in Protection and that he was the person responsible for the manufacture of the methamphetamine."

Police officers executed the signed search warrant on a trailer home at 107 West Main. During the execution of the search warrant, the officers saw three individuals standing by a parked car and a woman and a small child inside the car. Adams was one of the three individuals standing by the car.

Upon entering the residence, the officers smelled a strong chemical odor coming from a bottle setting in a skillet. There was also a haze throughout the kitchen area. The living room and kitchen opened into a hallway that led to different rooms. In one of the back rooms was a bedroom the officers suspected was being used for a methamphetamine lab. They found several pieces of what they suspected were paraphernalia being used to manufacture methamphetamine.

Following the initial execution of the search warrant, six suspects were detained. After reading Adams his *Miranda* rights, Deputy Allan questioned him. Adams made several statements that indicated he was familiar with pieces of paraphernalia being used in his house to manufacture methamphetamine.

Agents for the Kansas Bureau of Investigation (KBI) were called in to process the house as a possible methamphetamine lab. They performed a complete search of the home and processed a large number of items used in the manufacture of methamphetamine. Many of the items were sent for chemical analysis. Methamphetamine was detected in eight different samples. Additionally, chemical analysis detected chemicals used in the manufacture of methamphetamine.

The State charged Adams on six counts: (1) manufacture of methamphetamine, a severity level 1 drug felony, (2) conspiracy to manufacture methamphetamine, a level 1 nonperson felony, (3) possession of lithium metal with the intent to manufacture methamphetamine, a level 2 drug felony, (4) possession of drug paraphernalia to manufacture a controlled substance, a level 4 drug felony, (5) possession of methamphetamine, a level 4 drug felony, and (6) possession of drug paraphernalia to use a controlled substance, a class A nonperson misdemeanor.

On April 25, 2008, Adams filed a motion to suppress the search warrant. In his motion, he argued that while the affidavit stated

Deputy Allen had knowledge of how methamphetamine was manufactured, Allen had no personal knowledge of the process of cooking methamphetamine. Adams argued that because Allen lacked personal knowledge, the affidavit was insufficient to enable the magistrate to make a determination that probable cause existed.

During its motions hearing, the trial court considered whether Deputy Allen's affidavit was valid. Following testimony by Chief Konrade, the trial court ruled that even absent the statements Adams claimed were problematic, the affidavit was still sufficient to support probable cause. The court then went further and found the affidavit contained no material misrepresentations or reckless disregard for the truth and the evidence found in the affidavit was sufficient grounds for a search warrant. The court denied Adams' motion to quash the warrant and suppress the evidence.

At jury trial, Nelson testified for the State and stated that she and Adams had used methamphetamine at the time of the investigation. Nelson also testified she and Adams had used various forms of paraphernalia to ingest the methamphetamine. Adams did not object to this testimony. Nelson then testified that Adams and Pitcherello had been partners in manufacturing methamphetamine. She also testified to some of the specific processes that they engaged in while manufacturing methamphetamine, including gassing, processing pseudoephedrine pills, and the use of anhydrous ammonia.

Two of the individuals at the residence during the execution of the search warrant, Tina Steinbarger and Charles Townsend, also testified at trial. Steinbarger testified that she, Townsend, and Pitcherello had driven together from Oklahoma to Adams' residence. Before arriving, she did not possess any methamphetamine. Steinbarger testified that she and Townsend stayed in the vehicle while Pitcherello went into the residence. Townsend and Steinbarger entered the residence about a half hour later when Nelson borrowed their vehicle. Steinbarger testified that once inside, she, Townsend, and Pitcherello all injected methamphetamine.

Townsend testified that he had provided Picherello and Adams with pseudoephedrine pills in exchange for the two manufacturing methamphetamine for him. Townsend testified that while he and

Steinbarger waited in the truck outside Adams' trailer, he saw shadows in a room where Steinbarger had told him Pitcherello and Adams were cooking methamphetamine. Townsend entered the trailer, and the people inside the trailer, including Adams, were using methamphetamine. Townsend testified that after using the methamphetamine, Adams left the room and walked back towards the room where he had seen the shadows. Townsend testified that when Adams entered the room, the ammonia-like odor got much worse and Picherello left the room holding a small, brown container with methamphetamine which he had obtained from the trailer. Townsend identified that small, brown container as one of the containers police had seized in the bust.

The jury returned a verdict of guilty to all charges. The trial court sentenced Adams to a controlling sentence of 148 months for the manufacture of methamphetamine charge, and concurrent terms of 148 months for conspiracy; 51 months for possession of lithium metal; 12 months for possession of drug paraphernalia; 12 months for possession of methamphetamine; and 12 months for possession of drug paraphernalia. The court ordered these sentences to be served consecutive to another sentence in Oklahoma.

In *Franks v. Delaware*, 438 U.S. 154, 171-72, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), the United States Supreme Court dealt with the issue of whether the underlying truthfulness of an affidavit in support of a search warrant could be attacked. The Supreme Court of Kansas in *State v. Jacques*, 225 Kan. 38, 43, 587 P.2d 861 (1978), cited *Franks*:

" 'In the present case the Supreme Court of Delaware held, as a matter of first impression for it, that a defendant under *no* circumstances may so challenge the veracity of a sworn statement used by police to procure a search warrant. We reverse, and we hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the

fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.' 438 U.S. at 155."

Adams argues that the standard of review when a trial court reviews the finding in a *Franks*-style hearing is the same as a review of any other ruling on a motion to suppress. Generally, an appellate court reviews the trial court's decision on a motion to suppress using a bifurcated standard. Without reweighing the evidence, unless it is incredible the trial court's findings are reviewed to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion regarding the suppression of evidence is reviewed using a de novo standard. *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007). As in this case, when the material facts in a trial court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Fitzgerald*, 286 Kan. 1124, 1126, 192 P.3d 171 (2008).

However, when an appellate court reviews the sufficiency of the trial court's decision to uphold a search warrant affidavit, the standard is more deferential to the trial and magistrate courts.

"[T]he specific, narrower question within the district court's general determination of suppressiona magistrate judge's finding of probable cause to issue a search warrantis reviewed under a different standard. [Citations omitted.] As this court held in *State v. Hicks*, 282 Kan. 599, Syl. ¶ 2, 147 P.3d 1076 (2006), the correct standard of review is instead more deferential to the magistrate judge. The deference is owed by all reviewing courts, district and appellate. More specifically, the standard is whether the evidence provided the magistrate issuing the search warrant with a substantial basis for determining that probable cause existed." *State v. Fisher*, 283 Kan. 272, 300, 154 P.3d 455 (2007).

Furthermore, where a reviewing court has performed an evidentiary hearing to determine if the affidavit contains statements which are knowingly or intentionally misleading or made with reckless regard for the truth, findings of fact from the evidentiary hearing are to be upheld if supported by substantial competent evidence. *State v. Bowles*, 28 Kan. App. 2d 488, Syl. ¶ 3, 18 P.3d 250 (2001).

Generally, a search warrant is presumed valid and the facts contained therein may not be disputed by the party against whom the warrant is directed. *Jacques*, 225 Kan. at 43. An exception to this rule exists where the party challenging the affidavit presents an offer of proof that the affidavit contains material statements of deliberate falsehood or reckless disregard for the truth. 225 Kan. at 43-44. However, if the trial court can set aside the challenged portions of the affidavit and still find sufficient evidence of probable cause, the court does not need to hold an evidentiary hearing. *Franks v. Delaware*, 438 U.S. at 171-72. If the defendant meets both requirements, the trial court must conduct an evidentiary hearing related to the evidence seized from the execution of the search warrant.

In this case, the trial court considered the issue of the affidavit's validity at the preliminary hearing held on June 12, 2008. The court's final determination was that the parts of the search warrant that Adams challenged under *Franks* would not have made a difference in whether the affidavit contained sufficient information for probable cause. The court then made an additional finding that the statements Deputy Allen made on the affidavit were not material misrepresentations or made in reckless disregard for the truth.

As a result of the trial court's findings, it never conducted a *Franks*-style evidentiary hearing. The standard of review in this case relates to the initial finding that the affidavit supported probable cause. Therefore, the standard of review in this case is the more deferential standard of review.

Adams argues the trial court erred in denying his motion to suppress evidence seized as a result of the execution of the search warrant. He argues that Deputy Allen overstated his knowledge of the process of manufacturing methamphetamine.

Adams points to several places on the affidavit he claims contain falsehoods. First, he points to Deputy Allen's statement, "I am familiar with how controlled substances are manufactured, obtained, diluted, packaged, distributed, sold and used." The affidavit also contained statements that Allen knew the method of cooking which involved using red phosphorous. Adams argues this state-

ment is misleading, citing as evidence Allen's testimony during preliminary hearings. When asked on cross-examination, Allen stated that he was not familiar with the different cooking methods and he had used a search warrant template that was in his computer system.

In order to analyze whether the trial court erred in denying Adam's motion to suppress, we need only consider whether the affidavit was sufficient to establish probable cause without the statements to which Adams objects. "Probable cause exists if the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed. [Citation omitted.]" *State v. Abu-Isba*, 235 Kan. 851, 854, 685 P.2d 856 (1984).

The trial court found there was sufficient evidence for probable cause based on the statements made by Nelson which were included in the affidavit. The affidavit contains the following relevant evidence gathered from Nelson:

"[Nelson] stated that the precursors that she had purchased were located at 107 W. Main in Protection, Kansas. Also Mrs. Nelson provided a voluntary written statement about these activities. Mrs. Nelson also stated that George Pitcherello was at her residence at 107 W. Main in Protection and that he was the person responsible for the manufacture of the methamphetamine."

Based on this evidence, the trial court found that even if Allen's statements about his training in the manufacture of methamphetamine were misleading, evidence from Nelson provided probable cause that George Pitcherello was manufacturing methamphetamine at her residence.

Adams argues that without Allen's statements, the rest of the affidavit cannot show probable cause. He argues that without Allen's statements explaining what precursors were, the statement that Nelson said the precursors were at her home was meaningless. This is not true. During Nelson's arrest, Chief Konrade asked her specifically about precursors, and she responded that several were at her house in Protection and being used by Pitcherello to manufacture methamphetamine. Even had Deputy Allen not included

a statement about what precursors were, Nelson's admissions create probable cause that someone was manufacturing methamphetamine at her residence.

This is especially relevant given the deferential standard of review we apply to the magistrate court in determining the validity of a search warrant. Given only the information provided by Nelson, the magistrate would clearly have a substantial basis to determine there was probable cause that methamphetamine was being manufactured in Nelson's residence.

Furthermore, the affidavit did not contain material statements of deliberate falsehood or reckless disregard for the truth. While Deputy Allen testified he was not familiar with the different cooking methods or an expert in the manufacture of methamphetamine, this did not make his statements on the affidavit deliberately false. Allen testified that he had some training in the manufacture of methamphetamine, although the training was not extensive. The fact that he used a template in preparing the search warrant was not enough to constitute a material misrepresentation. The template states only that the officer has familiarity with how controlled substances are manufactured. While the template may have stated more specifics than Allen was fully knowledgeable of, Adams does not show these overstatements were part of a deliberate attempt to mislead or were in reckless disregard for the truth.

Allen stated in his testimony that he was certified in law enforcement and had been trained regarding the investigation of narcotics. The trial court was therefore correct in determining that while the affidavit template contained some defects, they were not material.

The trial court was correct in its denial of the motion to suppress.

We next deal with the issue of whether the trial court gave an improper jury instruction regarding prior bad acts.

An appellate court reviewing a district court's failure to give a particular instruction applies a clearly erroneous standard where a party neither suggested an instruction nor objected to its omission. *State v. Cooperwood*, 282 Kan. 572, 581, 147 P.3d 125 (2006); see K.S.A. 22-3414(3).

" 'Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would

have rendered a different verdict if the trial error had not occurred.' [Citation omitted.]" *State v. Carter,* 284 Kan. 312, 324, 160 P.3d 457 (2007).

Adams argues the district court committed reversible error by giving an incorrect jury instruction regarding Adams' past drug use. The instruction to which he objects is the third part of instruction 13, which was patterned on PIK Crim. 3d 67.13-D. The relevant portions of the instruction are as follows:

"When a Defendant is in nonexclusive possession of the premises upon which a controlled substance is found, it cannot be inferred that the Defendant knowingly possessed the controlled substance unless there are other circumstances linking the Defendant to the controlled substance. Factors you may consider in determining whether the Defendant knowingly possessed the controlled substance include:

1. Defendant's use of controlled substances . . . ."

Adams argues this instruction is clearly erroneous, citing *State v. Boggs,* 287 Kan. 298, 317-18, 197 P.2d 441 (2008). In *Boggs,* the passenger in a car was arrested after a marijuana pipe was found under the passenger seat of the car in which he was riding. Boggs argued he was not in possession of the pipe under the statutory definition of possession. The Supreme Court concluded that because the only issue was which of the two men possessed the pipe, intent, knowledge, or absence of mistake were not disputed issues and, therefore, the introduction of Boggs' prior convictions did not fall within the exceptions of K.S.A. 60-455. 287 Kan. at 308-09. Specifically, the *Boggs* court found:

"While a defendant's use of a controlled substance may be admitted—subject to the requirements of K.S.A. 60-455—when such evidence is relevant to prove a disputed material fact, the defendant's use of a controlled substance is not a factor that is automatically admissible as an exception to the specific mandates of K.S.A. 60-455. To the extent that PIK Crim. 3d 67.13-D suggests otherwise, the instruction is disapproved." 287 Kan. at 318.

*Boggs* is not analogous to this case. First, Boggs objected to the introduction of evidence of his prior drug use. Second, the evidence of drug use introduced in *Boggs* was evidence of drug use a month prior to his arrest. By contrast, the evidence of Adams' drug use was use at the time he was committing the crimes for

which he was charged. These distinctions make *Boggs* inapplicable to Adams' case. The instruction in this case was correct because it was meant to show that Adams' contemporaneous use of drugs could help to prove possession. This is distinguishable from *Boggs*. This is not a question of admissibility of evidence of prior drug use and would not be an issue under K.S.A. 60-455. The instruction was appropriate.

We must also deal with the issue of whether the trial court erred in sentencing Adams to a level 2 felony for possession of lithium metal with the intent to manufacture a controlled substance instead of sentencing him to the lesser penalty provision of possession of drug paraphernalia with intent to manufacture a controlled substance.

This issue involves the interpretation of statutes. "The interpretation of a statute is a question of law over which this court has unlimited review." *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006), *rev. denied* 287 Kan. 767 (2009).

Adams did not object to this error at sentencing. However, K.S.A. 21-4721(e)(3) gives appellate courts the jurisdiction to review claims that the sentencing court erred in ranking the sentence severity level of a crime. *State v. Dalton*, 41 Kan. App. 2d 792, 795, 207 P.3d 257 (2008), rev. denied 287 Kan. 767 (2009).

Adams argues that the elements of possession of lithium metal with intent to manufacture a controlled substance—see K.S.A. 2007 Supp. 65-7006(a), (2009 repeal and recodification inapplicable)—are identical to possession of drug paraphernalia with intent to manufacture a controlled substance—see K.S.A. 2007 Supp. 65-4152(a)(3) (2009 repeal and recodification inapplicable). Adams argues the sentence for possession of lithium metal, a level 2 drug felony, is illegal and the trial court should have sentenced him to only the level 4 drug felony for possession of drug paraphernalia with intent to manufacture a controlled substance. "Where two criminal offenses have identical elements but are classified differently for purposes of imposing a penalty, a defendant convicted of either crime may be sentenced only under the lesser penalty provision." *State v. Nunn*, 244 Kan. 207, 229, 768 P.3d 268 (1989).

Adams bases his argument on *State v. Campbell,* 279 Kan. 1, 106 P.3d 1129 (2005). Campbell was convicted of several charges relating to methamphetamine, including possession of ephedrine and possession of drug paraphernalia with the intent to manufacture. Campbell was convicted of possession of ephedrine in violation of K.S.A. 2000 Supp. 65-7006, which provided in part:

"(a) It shall be unlawful for any person to possess ephedrine, pseudoephedrine or phenylpropanolamine, or their salts, isomers or salts of isomers with intent to use the product as a precursor to any illegal substance.

. . . .

"(d) A violation of this section shall be a drug severity level 1 felony."

Campbell argued he should have been sentenced only under the lesser penalty provision of K.S.A. 2000 Supp. 65-4152, which provided in part: "No person shall . . . possess with intent to use . . . (3) any drug paraphernalia to . . . manufacture [or] compound . . . a controlled substance in violation of the uniform controlled substances act." 279 Kan. at 4. Drug paraphernalia was defined in K.S.A. 65-4150(c) as: "products and materials of any kind which are used or intended for use in . . . manufacturing . . . a controlled substance." 279 Kan. at 4. The *Campbell* court found:

"The conduct prohibited by K.S.A. 65-7006(a) is a defendant's act of knowingly possessing ephedrine or pseudoephedrine with the intent to use the product to manufacture a controlled substance. The conduct prohibited by K.S.A. 65-4152(a)(3) is a defendant's act of knowingly possessing drug paraphernalia with the intent to use it to manufacture a controlled substance. The definition of drug paraphernalia in K.S.A. 65-4150(c) includes 'products and materials of any kind' which are intended for use in manufacturing a controlled substance. Thus, the conduct prohibited by K.S.A. 65-4152(a)(3) may include a defendant's act of knowingly possessing a product with the intent to use it to manufacture a controlled substance. Ephedrine and pseudoephedrine are products used in the manufacture of a controlled substance, methamphetamine. . . The elements were the same whether Campbell had been charged under the ephedrine statute or the drug paraphernalia statute. Consequently, he must be sentenced under the lesser penalty provisions for violation of 65-4152(a)(3)." 279 Kan. at 16-17.

The decision in *Campbell* was an approval of this court's decision in *State v. Frazier,* 30 Kan. App. 2d 398, 42 P.3d 188, *rev. denied* 274 Kan. 1115 (2002). The *Frazier* court found that because the list of items found in K.S.A. 65-4150(c) as to what was classified as

drug paraphernalia was not an all-inclusive list containing both the terms "products" and "materials," both ephedrine and pseudoephedrine, which are products in the manufacture of methamphetamine, would be included under both statutes. 30 Kan. App. 2d at 404-05. As a result, the *Frazier* court found the defendant could only be charged with the lesser sentence of possession of paraphernalia with intent to manufacture. 30 Kan. App. 2d at 405.

The relevant holdings in both *Campbell* and *Frazier* have been superseded by statute. *Dalton*, 41 Kan. App. 2d at 794-95. Since *Campbell*, the legislature has amended K.S.A. 65-4150(c) to remove the word "products." L. 2006, ch. 194, sec. 33. The *Dalton* court found that the clear legislative intent in amending the statute was to exclude those "products" listed in K.S.A. 2006 Supp. 65-7006(a). 41 Kan. App. 2d at 795.

The laws in effect at the time of Adams' crime contain the following relevant provisions. First, K.S.A. 2007 Supp. 65-4150(c) defines drug paraphernalia: " 'Drug Paraphernalia' means all equipment and materials of any kind which are used, or primarily intended or designed for use in . . . manufacturing . . . a controlled substance and in violation of the uniform controlled substances act." K.S.A. 2007 Supp. 65-4152 defines the crime of possession of drug paraphernalia with the intent to manufacture a controlled substance. "(a) No person shall use or possess with intent to use . . . (3) any drug paraphernalia to . . . manufacture . . . a controlled substance in violation of the uniform controlled substances act." And the statute defines the penalty as: "(c) Violation of subsection(a)(3), other than as described in paragraph (d), or subsection (a)(4) is a drug severity level 4 felony." K.S.A. 2007 Supp. 65-4152(c).

K.S.A. 2007 Supp. 65-7006(a) provides: "It shall be unlawful for any person to possess ephedrine, pseudoephedrine, red phosphorus, [or] lithium metal . . . with intent to use the product to manufacture a controlled substance."

Adams argues the phrase "materials of any kind" in 65-4150(c) still includes lithium metal even though the word "product" has been removed. However, this case is nearly identical to the case in *Dalton*. In *Dalton*, the question was whether red phosphorous was

both drug paraphernalia and a prohibited substance, thus producing identical criminal elements under 65-4152(a)(3) and 65-7006(a). 41 Kan. App. 2d at 793-94. The *Dalton* court found that the removal of the word "product" was sufficient to make the criminal elements of the two statutes distinct. 41 Kan. App. 2d at 797-98. The words lithium and red phosphorous are literally next to one another in the statute. K.S.A. 2007 Supp. 65-7006(a). There is no reason that this court should now treat the two differently.

The *Dalton* court also explicitly rejected the argument that the "material of any kind" in the definition of drug paraphernalia caused the elements to be identical in the context of aggravating factors under K.S.A. 21-4717(a)(1)(D):

"Even though possession of red phosphorus can be used as an aggravating factor to support a sentencing departure, it would be incorrect to rely upon K.S.A. 21-4717(a)(1)(D)'s description of manufacturing materials to define drug paraphernalia, *i.e.* 'material of any kind' in K.S.A. 2007 Supp. 65-4150(c), as including 'regulated chemicals,' such as red phosphorus. If the legislature wished to define material in that way, it could have done so." 41 Kan. App. 2d at 798.

The sentence given to Adams was correct.

Adams finally argues the facts of his criminal history for prior convictions were not proved to a jury beyond a reasonable doubt. He contends this violates the United States Supreme Court ruling that any fact which increases the penalty beyond the statutory maximum must be proven to a jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

We are duty bound to follow Kansas Supreme Court precedent absent some indication the court is departing from its previous position. *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007). The Kansas Supreme Court has previously decided this issue in *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). There is no indication that the Kansas Supreme Court intends to abandon this position. See *State v. Fischer*, 288 Kan. 470, 476, 203 P.3d 1269 (2009) (reaffirming *Ivory*).

Affirmed.